United States Court of Appeals
Fifth Circuit

**F I L E D**

June 20, 2006

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

————————

No. 05-11094

————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTHONY RANDALL JACKSON,

Defendant-Appellant.

————————————————————————

Appeal from the United States District Court
For the Northern District of Texas

————————————————————————

Before GARWOOD, DAVIS, and GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Anthony Randall Jackson appeals his twenty-four-month prison sentence for possession of

a firearm by a person convicted of a felony.

I

Dallas police officers, responding to the sound of a gun shot, observed Jackson near a vehicle

parked in a housing complex. As the officers approached, a woman told them that Jackson had a gun.

After detaining Jackson, the officers searched the vehicle and discovered a revolver loaded with five

rounds of live ammunition and one spent round. According to federal and state law enforcement reports, the woman, identified as Jackson's common-law wife or girlfriend, told the officers that the couple had argued and that Jackson had pushed her to the ground, brandished the revolver, and fired one round into the air.

Jackson pled guilty in federal district court to possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The court-ordered presentence report ("PSR") recommended a four-level increase in the base offense pursuant to U.S.S.G. § 2K2.1(b)(5) based upon Jackson's use of a firearm "in connection with another felony offense"—aggravated assault under § 22.02 of the Texas Penal Code. Jackson filed an objection to this recommendation, asserting that his conduct on the day of his arrest qualified only as a misdemeanor under state law.[1]

The district court heard argument addressing Jackson's objection. Defense counsel stressed that Jackson's girlfriend had provided an affidavit recanting, in part, her statements to the police.[2] Defense counsel then proffered Jackson's version of the events. "[T]here was a brushing aside or pushing aside that happened ten minutes before and Mr. Jackson discharged his firearm 10 to 15 minutes after. I don't believe that would constitute [aggravated assault]." The Government argued that Jackson's conduct constituted aggravated assault under state law because Jackson "used or exhibited a dangerous weapon . . . essentially putting the victim in the apprehension of a battery." The district court overruled Jackson's objection, stating that, "based upon what is contained in the

---

[1] Although the State charged Jackson with unlawful possession of a firearm, public intoxication, and assault, the record does not disclose the outcome of any proceedings in state court.

[2] In that affidavit, Jackson's girlfriend asserted: "He never pulled a gun out on me, but I told the police that he did. I was so mad at that man. We did get into a fight. I hit him, and he hit me. I cannot say who hit who first, but we both hit each other." Although Jackson's girlfriend was present in the courtroom, defense counsel never called her to testify.

[PSR] and the sequence of events, the Court does believe that ample evidence exists in the record to establish that there was a felony assault." The court also opined that "there is enough evidence [even under Jackson's version of the events] to establish a felonious assault under Texas law."

After argument, but before sentencing, the court gave Jackson the opportunity to allocute and offer reasons for mitigation of his sentence. Jackson objected to the more severe sentence. He asserted that he did not assault his girlfriend and stated that she was present in the courtroom and could establish that he merely "pushed her away from the door." The court responded directly to Jackson stating:

> I guess I need to know then if she is filing false reports with the Dallas police officers, then we need to explore that avenue. If she is calling the police and filing false reports, that in itself is a crime. It can't be both ways. . . . [M]aybe the jig might be up for her if she is filing false reports. I am just making it clear that, you know, when you talk or you make reports or somebody takes an oath, I mean if somebody does not tell the truth, there are going to be consequences behind that. All I'm saying is that at some point in time, you know, there [were] police reports filed. . . . I understand that she has retracted th[ose] statement[s] or she is not willing to make those statements. You know, you ultimately have to decide, which is true. . . . Is she telling the truth now or was she telling the truth then or telling the truth later?

Although uncertain that such testimony was necessary and despite having already ruled on Jackson's objection, the court asked defense counsel if he intended to call the witness to testify. Defense counsel acknowledged that he shared the court's concerns regarding false statements and requested an admonishment from the court if she chose to testify. After inquiry, Jackson's girlfriend chose not to testify. The court then reaffirmed its earlier determination that there was sufficient evidence supporting the enhancement and sentenced Jackson to twenty-four months in prison.[3]

---

[3] His sentencing was post-*Booker*.

II

A

Jackson argues that the district court violated his constitutional rights by "threatening" his girlfriend with criminal prosecution if she took the stand. Defense counsel did not object to the district court's comments during the sentencing hearing and, accordingly, we review only for plain error. *United States v. Lankford*, 196 F.3d 563, 572 (5th Cir. 1999); *see United States v. Lopez*, 923 F.2d 47, 50 (5th Cir. 1991) ("'Plain error' is error which, when examined in the context of the entire case, is so obvious and substantial that failure to notice and correct it would affect the fairness, integrity or public reputation of judicial proceedings.").[4]

Although Jackson claims that his constitutional rights at sentencing had been violated, he relies primarily upon precedent interpreting the scope of a defendant's constitutional rights at trial. It is well-established, however, that a defendant's rights at sentencing differ considerably from his pre-conviction rights. *See, e.g., United States v. Young*, 981 F.2d 180, 187-88 (5th Cir. 1992) (stating that, at sentencing, due process merely requires that information be reliable); *United States v. Rodriguez*, 897 F.2d 1324, 1328 (5th Cir. 1990) (stating that "a defendant's confrontation rights at a sentencing hearing are severely restricted"). At sentencing, a defendant has a protected due process right to review and object to a PSR, but no absolute right to present witnesses. *United States*

---

[4] Although Jackson now argues that an objection would have been futile, the record supports no such finding. The district court was cordial to defense counsel and there is no indication in the record that it was unwilling to consider a proper objection. *Cf. United States v. Castillo*, 430 F.3d 230, 243 (5th Cir. 2002) (noting that requiring an objection where the district court expressed anger, hostility, and an unwavering opinion on the disputed issue, would exalt form over substance). Furthermore, defense counsel's request that the court warn Jackson's girlfriend of the legal implications if she chose to testify suggests that he did not find the district court's statements objectionable at the time.

*v. Henderson*, 19 F.3d 917, 927 (5th Cir. 1994).[5] Here, Jackson had the opportunity to examine the

PSR, make objections, and present affidavits to support his claim that he did not assault his girlfriend.

Under the circumstances, Jackson's due process rights were appropriately protected, and the district

court was not required to receive additional witness testimony before sentencing. *Id*.

Even assuming that Jackson had the right to present his girlfriend as a witness at sentencing,

he has failed to demonstrate that the district court's allegedly threatening statements were clearly

erroneous. *See United States v. Olano*, 507 U.S. 725, 732 (1993) (asserting that, where a defendant

fails to object, reversible error must be "plain," "clear," or "obvious"). Although we agree that the

district court could have identified the risks of false statements in a less forceful manner, we note that

the district court did not speak directly to the witness, and its comments, while presented sternly to

Jackson, were not threatening. *See United States v. Nunn*, 525 F.2d 958, 960 (5th Cir. 1976) ("[T]he

judge did not use 'unnecessarily strong terms (that could) have exerted such duress on the witness's

mind as to preclude him from making a free and voluntary choice whether or not to testify.'" (quoting

*Webb v. Texas*, 409 U.S. 95, 98 (1972))); *United States v. Gloria*, 494 F.2d 477, 485 (5th Cir. 1974)

(finding no error where the district court "merely advised of the possibility of prosecution if [witness]

testimony materially differed").[6] Rather, the district court informed Jackson of the risks his girlfriend

---

[5] *See United States v. Prescott*, 920 F.2d 139, 144 (2d Cir. 1990) ("[A] sentencing court is under no duty to conduct a full-blown evidentiary hearing simply because contested hearsay testimony is contained in a presentence report."); *United States v. Giltner*, 889 F.2d 1004, 1008 (11th Cir. 1989) ("While due process requires that appellant be afforded the opportunity to refute the information brought against him at sentencing, it does not require that appellant be given the opportunity to call and cross-examine witnesses to rebut the information." (internal citation omitted)).

[6] *See United States v. Smith*, 997 F.2d 674, 680 (10th Cir. 1993) (finding no abuse of discretion where the district court's warnings were not directed toward the witness, where counsel explained the risk of perjury to the witness, and where the district court was aware that there was a

would face if he called her to testify and if she testified in a manner that differed from her statement to the police. *See United States v. Greer*, 806 F.2d 556, 559 (5th Cir. 1986) ("The district judge . . . has the duty to ensure that all witnesses understand the importance of their appearance and adhere to the oath of truthfulness.").[7] Although our decision should not be misconstrued as approbation of the district court's admonishment, we hold that it did not commit plain error under these circumstances. *See United States v. Thompson*, 130 F.3d 676, 685 (5th Cir. 1997) (rejecting a due process challenge where "the court's comments, when read in context, [were] not error").[8]

Jackson has also failed to establish prejudice because he cannot show that his sentence would have been different if his girlfriend had testified. *See Olano*, 507 U.S. at 732 (specifying that the defendant bears the burden of showing prejudice). Defense counsel submitted recanting affidavits and advised the district court of the defendant's version of the facts. The district court discredited those recantations and did not request testimony from the affiant. Although Jackson asserts on appeal that his girlfriend's testimony would have increased the probative value of her written affidavits, this

---

"real possibility of perjury").

[7] *See United States v. Arthur*, 949 F.2d 211, 215 (6th Cir. 1991) ("The district court has the discretion to warn a witness about the possibility of incriminating himself."); *United States v. Harlin*, 539 F.2d 679, 681 (9th Cir. 1976) (stating that "merely warning a defendant of the consequences of perjury" does not demand reversal).

[8] Jackson's heavy reliance upon *Webb*, is misplaced. The court in *Webb* spoke directly to the witness at trial and stated that "[i]f you take the witness stand and lie under oath, the Court will personally see that your case goes to the grand jury and you will be indicted for perjury and the liklihood (sic) is that you would get convicted of perjury and that it would be stacked onto what you have already got, so that is the matter you have got to make up your mind on." *Webb*, 409 U.S. at 96. In *Webb*, the court gave a personal guarantee of indictment and conviction. Here, the district court simply gave a forceful statement to the defendant regarding the potential consequences to his girlfriend who had neither indicated a willingness to take the stand nor been called by defense counsel or the defendant to testify.

assertion is improbable given the statements by the district court indicating that it was unwilling to credit her later recantations.[9] *See United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005) (noting that district court may decide facts at sentencing).

B

Assuming the correctness of the district court's warnings, Jackson also argues that the court erroneously applied the four-level enhancement in U.S.S.G. § 2K2.1(b)(5). "This court reviews the district court's findings of fact regarding sentencing factors for clear error. A factual finding is not clearly erroneous 'as long as it is plausible in light of the record as a whole.' We review the district court's interpretation and application of the sentencing guidelines *de novo*." *United States v. Gonzales*, 436 F.3d 560, 584 (5th Cir. 2006) (internal citations omitted).

Subsection 2K2.1(b)(5) of the Sentencing Guidelines provides for a four-level enhancement to the offense level when "the defendant used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(5) (2004). A "felony offense" under this subsection "means any offense (federal, state, or local) punishable by imprisonment for a term exceeding one year, whether or not a criminal charge was brought, or conviction obtained." U.S.S.G. § 2K2.1 cmt. n.4 (2004).

The district court determined that Jackson's conduct constituted felonious aggravated assault

---

[9] At one point, the district court opined:

> [I]t is not uncommon in domestic relationships for one side to retract statements. In fact, it happens quite frequently. You know, if a person is hysterical and making a statement, there is little room for fabrication. You have excited utterances. . . . Frankly speaking, there is less chance for fabrication than there is a week later or [a] few weeks later after someone has calmed down and wants to recount the story.

under § 22.02 of the Texas Penal Code. Under § 22.02(a)(2), a person commits an aggravated assault "if the person commits assault as defined in § 22.01 and the person . . . uses or exhibits a deadly weapon during the commission of the assault." TEX. PEN. CODE § 22.02(a)(2). A person commits an "assault" under § 22.01(a) if the person: "(2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." *Id*. at § 22.01(a).

Jackson contends that his use or exhibition of a deadly weapon was not "during the commission of the assault" under § 22.02(a) because any assault under § 22.01(a)(3) for pushing his girlfriend occurred 10-15 minutes earlier. This timing argument, while not wholly without merit, is not dispositive because assault in Texas does not require physical contact. Under section 22.01(a)(2), "[t]he gist of the offense of assault . . . is that one acts with intent to cause a reasonable apprehension of imminent bodily injury (though not necessarily with intent to inflict such harm). Thus, criminal assault of the type involved here requires that a person knowingly or intentionally threatens another with imminent bodily injury." *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981).[10] The district court applied the four-level enhancement in § 2K2.1(b)(5) based, in part, upon the undisputed fact that Jackson fired his pistol after pushing his girlfriend during a heated argument. Jackson does not provide a reason for firing the gun during the argument, and we can discern no reason for doing so other than to threaten and intimidate. Indeed, defense counsel conceded that Jackson fired the gun

---

[10] During the sentencing hearing, defense counsel conceded that it would be hard to refute that Jackson committed aggravated assault under the "threat" provision in section 22.01(a)(2) of the Texas Penal Code: "[I]f you take the shove out of the equation and just say . . . discharging a firearm constitutes an aggravated assault, the argument gets a little more difficult quite frankly . . . for our position."

when he thought that his girlfriend was going to throw something at his car. *See Miller v. State*, 741 S.W.2d 501, 504 (Tex. App.—Corpus Christi 1987, pet. ref'd) ("Appellant's statement that he fired his shotgun [at the tree tops] to get the men to stop amounted to a threat to inflict imminent bodily injury by using deadly force."). Upon our review of the record, we hold that there is adequate support for a finding that Jackson's conduct constituted an aggravated assault in that he knowingly or intentionally used his firearm to threaten his girlfriend with imminent bodily injury. *See Tidwell v. State*, 187 S.W.3d 771, 775 (Tex. App.—Texarkana 2006, pet. dism'd) (stating that the evidence was sufficient for assault where defendant possessed a revolver and made verbal threats even though defendant did not point the revolver at the complainant); *Edwards v. State*, 57 S.W.3d 677, 679 (Tex. App.—Beaumont 2001, pet. ref'd) ("The conduct prohibited by Section 22.01(a)(2) is making a threat, not pointing a weapon."); *De Leon v. State,* 865 S.W.2d 139, 142 (Tex. App.—Corpus Christi 1993, no pet.) ("The mere presence of a deadly weapon, under proper circumstances, can be enough to instill fear and threaten a person with bodily injury.").[11]

III

For the reasons stated, we affirm the district court's application of the four-level enhancement

---

[11] We are unable to discern from the record whether the district court imposed the enhancement in § 2K2.1(b)(5) based upon a finding that Jackson committed a felony by using or exhibiting a deadly weapon while "intentionally or knowingly threaten[ing] another with imminent bodily injury" under § 22.01(a)(2), or based upon a finding that he used or exhibited a deadly weapon during the course of a physical assault under § 22.01(a)(3). The parties argued the merits of each provision before the district court. However, "it is well settled that an appellate tribunal may affirm . . . on any ground supported by the record." *Lee v. Kemna*, 534 U.S. 362, 391 (2002); *see Bickford v. Int'l Speedway Corp.*, 654 F.2d 1028, 1031 (5th Cir. 1981) ("[R]eversal is inappropriate if the ruling of the district court can be affirmed on any grounds, regardless of whether those grounds were used by the district court."). We affirm because the record is sufficient to show that Jackson's conduct constituted an aggravated assault under § 22.01(a)(2) and decline to decide whether Jackson's conduct would also qualify as an aggravated assault under § 22.01(a)(3).

in U.S.S.G. § 2K2.1(b)(5) and Jackson's twenty-four-month sentence.