# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 17, 2013

No. 11-41097

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

BELEAL GARCIA–GONZALEZ,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, SMITH, and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

Beleal Garcia-Gonzalez ("Garcia") appeals his conviction and sentence of 360 months of imprisonment and $600 in assessment fees, challenging: (1) the propriety of a supplemental jury instruction and the sufficiency of the evidence in support of his jury convictions on three counts of child sex trafficking; (2) the calculation of his sentence under the U.S. Sentencing Guidelines; and (3) three of his six convictions for alien harboring on multiplicity grounds. We AFFIRM.

I.

This case involves four of eleven illegal female aliens (C.M., B.Y., D.L., and R.J.), who were smuggled under false pretenses from Honduras into the United

States to work in Garcia's bar, and tend to his customers.[1]  Three of the girls—C.M., B.Y., and D.L.—are sisters.

In October 2009, Garcia arranged for three of the four girls—C.M. (age seventeen), B.Y. (age fifteen), and R.J. (age fifteen)—to be transported illegally from Honduras into the United States.  The girls were escorted from Honduras by other men, with no money and only the clothes on their backs.  The girls were told that they would be working in a restaurant in the United States.  After reaching the United States, the girls were brought to Garcia's house.  The day that they arrived, Garcia took the girls shopping to buy revealing clothing and told them that they would be working and tending to customers at his bar.

Garcia promised the girls $20 a night in wages.  As part of the job, the girls had to "drink" with the customers.  If a customer wanted to sit with a girl, he had to buy her a beer for $6, of which the girl would earn $3.  The girls received a ticket for each beer purchased for them, and they turned in the tickets at the end of the week for payment.  Garcia never paid C.M. and B.Y. earnings for their tickets or their nightly wages.  Garcia kept the money and applied it to the $4,500 smuggling debt that they "owed" him and to the cost of the clothes he bought them.  Garcia told the girls that the only way they could earn money to keep for themselves was through having sex with his customers.  In total, C.M. had sex for pay with six customers, B.Y. had sex for pay with two customers, and R.J. did not have sex with any customers.

The fourth girl, D.L. (age fourteen), was smuggled into the United States illegally a few weeks after her older sisters—C.M. and B.Y.—under the same trafficking scheme and false pretenses.  Garcia told D.L. that she had to drink

---

[1] This recitation of the facts is based on evidence presented at trial viewed in a light that favors the jury's verdict.  *See United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010) ("In addition to deferring to . . . the district court's factual findings, the court must view the evidence most favorably to the party prevailing below, except where such a view is inconsistent with the trial court's findings or is clearly erroneous considering the evidence as a whole."(internal quotation omitted)).

with customers, promised her the same $20 nightly wage and $3 for each drink, and kept and applied all earned wages to her smuggling debt. Similar to the other girls, Garcia told D.L. that having sex with customers was the only way for her to make money to keep. Although D.L. did not have sex for pay with any customer, customers touched her inappropriately at the bar.

At first, the four girls lived at Garcia's house with other girls who had been smuggled into the United States illegally, where Garcia and his employees constantly monitored them. The girls were not allowed to leave the house without Garcia's permission, and needed to be supervised by Garcia or one of his employees when they left. Garcia told the girls that he would look for them and harm their families if they escaped. He kept guns in the house, and pointed one at D.L. on at least one occasion. At a later date, the girls moved into a different house with one of Garcia's employees, who subjected them to the same monitoring. Eventually, law enforcement discovered and disbanded the illegal smuggling operation.

Garcia was charged with three counts of child sex trafficking, in violation of 18 U.S.C. § 1591(a)(1), one count of conspiring to harbor illegal aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I), and six counts of alien harboring, in violation of § 1324(a)(1)(A)(iii). During a four-day jury trial, the government built its case around the testimony of numerous witnesses, including C.M., B.Y., D.L., and R.J. The jury convicted Garcia on all counts. The district court adopted the factual findings in the Presentence Investigation Report ("PSR") and sentenced Garcia to 360 months on the child-sex-trafficking counts and 120 months on the alien-harboring counts, all to run concurrently, and a $100 assessment fee for each alien-harboring count. Garcia timely appealed.

## II.

## A.

Garcia's first claim on appeal challenges the propriety of a supplemental jury instruction and the sufficiency of the evidence in support of his convictions

for three counts of sex trafficking.[2]  We first address the jury instruction issue. We typically review jury instructions for abuse of discretion, but when, as here, "a jury instruction hinges on a question of statutory construction, this court's review is *de novo*."  *United States v. Wright*, 634 F.3d 770, 774 (5th Cir. 2011) (emphasis added).

The jury instructions correctly stated the three essential elements of child sex trafficking under § 1591(a): (1) "that the defendant knowingly recruited, enticed, harbored, transported, obtained or maintained [the victim];" (2) "that the recruiting, enticing, harboring, transporting, providing, obtaining or maintaining of [the victim] was in or affecting interstate or foreign commerce," and (3) that "the defendant committed such act knowing or in reckless disregard of the fact . . . that [the victim] was under the age of 18 years of age and would be caused to engage in a commercial sex act."  After providing these instructions, Jury Note Number 1 asked whether a sex act had to occur to find Garcia guilty of child sex trafficking under § 1591(a).  Over Garcia's objection, the district court answered no.

Garcia argues that the supplemental jury instruction modified the essential elements of the child-sex-trafficking offense and confused the jury. The government counters that the instruction was proper.

The plain text of § 1591(a) supports the government's position.  The text provides that ". . . the person has not attained the age of 18 years and will be caused to engage in a commercial sex act."  § 1591(a).  The future verb tense of

---

[2] 18 U.S.C. § 1591(a) punishes whoever "knowingly":

> (1) in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person . . . knowing, or in reckless disregard of the fact that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act . . . .

§ 1591(a).

the phrase "will be caused"—which precedes "to engage in a commercial sex act"—indicates that a sex act does not have to occur to satisfy the elements of the child-sex-trafficking offense. To conclude otherwise erases the meaning of "will be" from the statutory text. *See White v. Black*, 190 F.3d 366, 368 (5th Cir. 1999) (citation omitted) (explaining that we must "give words their ordinary meaning and . . . not render as meaningless the language of a statute"); *see also* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (1st ed. 2012) (discussing the "surplusage canon" of construction, which provides that "[i]f possible, every word and every provision is to be given effect").[3]

Next, we turn to the sufficiency of the evidence in support of Garcia's convictions on three counts of child sex trafficking, each of which involves a specific underage female victim (Count 1—C.M., Count 2—D.L., and Count 3—B.Y.). Garcia only disputes elements one and three of each count. Because Garcia moved for a judgment of acquittal at the close of the government's case, the panel reviews *de novo* the question of whether the evidence was sufficient to support his conviction. *See United States v. Xu*, 599 F.3d 452, 453 (5th Cir. 2010). We view "the evidence in the light most favorable to the prosecution," and consider whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis removed).

We conclude that the evidence was sufficient to support Garcia's convictions on all three counts of child sex trafficking under § 1591(a). As to Counts 1 and 3 (involving C.M. and B.Y.), a rational trier of fact could have found that the government satisfied the essential elements of the child-trafficking offense after crediting witness testimony establishing that:

---

[3] This conclusion is in harmony with the only other circuit that has explicitly addressed this issue. *See United States v. Brooks*, 610 F.3d 1186, 1197 & n.4 (9th Cir. 2010) (concluding that the elements of § 1591(a) can be satisfied even when the victim does "not ultimately engage in any acts of prostitution").

No. 11-41097

Garcia arranged for C.M. and her sister, B.Y., to leave Honduras with no money or clothes besides what they were wearing, under false pretenses that they would be working in a restaurant. C.M. was seventeen years old and B.Y. was fifteen years old when they were smuggled into the United States. On the day that C.M. and B.Y. arrived in United States, Garcia took them to buy revealing clothing for their jobs in his bar, where customers paid for the sisters to drink alcohol. Garcia kept and applied all wages earned to the sisters' smuggling debt. Garcia and his employees constantly monitored the sisters, and Garcia threatened that he would harm the sisters' family if they tried to escape. C.M. testified that Garcia told her that the only way she could make money was through having sex with customers. Garcia proposed that the sisters engage in prostitution, told them how much to charge for sex, and arranged the sexual encounters. From this evidence, a rational trier of fact could have concluded that Garcia knowingly harbored C.M. and B.Y., and created a situation in which he knew, or at the very least, recklessly disregarded, that his actions would cause C.M. and B.Y. to engage in prostitution with his customers.[4]

---

[4] Garcia also raises two additional arguments, both of which we reject because they are based on improper interpretations of 18 U.S.C. § 1591(a). First, with respect to C.M., Garcia argues that the government cannot satisfy element one—that he knowingly recruited, harbored, and transported C.M. into the United States illegally—alleging that he did not "coerce" C.M. into prostitution, and that she engaged in prostitution voluntarily. This argument is irrelevant because the government was not required to prove coercion under the plain terms of § 1591(a) given that C.M. was under the age of eighteen. *Id.* Moreover, a rational trier of fact could have inferred "coercion" after considering the evidence described above.

Second, with respect to B.Y., Garcia argues that the evidence was insufficient to establish prong three—that he knew or was in reckless disregard that his actions would cause B.Y. to engage in prostitution—on the grounds that the evidence does not show that he used any means to cause B.Y. to engage in prostitution. In support of his claim, he relies on B.Y.'s admission in testimony that Garcia never told her to engage in prostitution. This argument is unpersuasive because it relies on a "means to cause" element in § 1591(a) that applies in cases that only involve victims who have reached the age of eighteen. To establish this element in the instant case, the government was only required to prove that Garcia knew, or was in reckless disregard, that: (1) B.Y. was under the age of eighteen, and (2) she would be caused to engage in commercial sex. *Id.* As explained above, a rational trier of fact could have concluded that the government established these elements beyond a reasonable doubt.

No. 11-41097

As to Count 2 involving D.L., we conclude that a rational trier of fact could have found that the government satisfied the essential elements of the child-sex-trafficking offense after considering the following evidence in the record: Garcia arranged for D.L., who was then fourteen years old, to be smuggled into the United States a few weeks after her older sisters. Similar to her sisters, D.L. was smuggled under false pretenses that she would work in a restaurant. Garcia put D.L. to work in his bar, kept and applied all wages earned to her smuggling debt, and told her that she could "have relations" if she wanted to make money.[5]

Having rejected each of Garcia's sufficiency challenges, we conclude that the evidence was sufficient to support all three of his child-sex-trafficking convictions.

B.

Garcia's second claim on appeal challenges the calculation of his 360-month Guidelines sentence on four grounds, each of which we reject. We review *de novo* the district court's application and interpretation of the Guidelines. *United States v. Solis–Garcia*, 420 F.3d 511, 514 (5th Cir. 2005). We review the district court's factual findings supporting an enhancement for clear error. *United States v. Mata*, 624 F.3d 170, 174 (5th Cir. 2010). We may affirm an enhancement on any ground supported by the record. *United States v. Jackson*, 453 F.3d 302, 308 n.11 (5th Cir. 2006).

1.

First, Garcia argues that the district court's factual determinations in support of applying a two-point enhancement pursuant to U.S.S.G. § 2L1.1(b)(6) enhancement were clearly erroneous. Section 2L1.1(b)(6) allows for a two-point

---

[5] Garcia further argues that the government cannot satisfy the essential elements of the child-sex-trafficking offense because D.L. never had sex with a customer. This argument lacks merit because, as explained above, the plain terms of § 1591(a) do not require a sex act to occur.

enhancement "[i]f the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person." § 2L1.1(b)(6). The district court overruled Garcia's objection to the § 2L1.1(b)(6) enhancement on the grounds that Garcia's harboring of the female victims intentionally or recklessly created a substantial risk of serious bodily injury by causing them to engage in prostitution. The district court's determination was informed by statutory rape laws in Texas, where the legal age of consent is seventeen. TEX. PENAL CODE § 22.011(a)(2),(c).

Garcia argues that the only victim under the age of eighteen who testified that she had sex in connection with her job at his bar was seventeen years old and, therefore, above the age of consent in Texas. Regardless, we may affirm the enhancement on any ground supported by the record. *Jackson*, 453 F.3d at 308 n.11. The application note to § 2L1.1(b)(6) states that the enhancement applies to a "wide variety of conduct." § 2L1.1, cmt. 5. The PSR recommended the application of the enhancement based on the fact that "five (5) of the eleven (11) undocumented aliens harbored engaged in prostitution after being coerced and/or otherwise forced into the said practice at the [defendant's bar]." The district court adopted the facts in the PSR. Based on the Guidelines commentary and these facts, we conclude that the district court's determination that Garcia's actions intentionally or recklessly created a substantial risk of serious bodily injury by coercing them to engage in prostitution for financial support, regardless of their age, was not clearly erroneous.

Even if the district court's conclusion that Garcia intentionally or recklessly created a substantial risk of serious bodily injury was clearly erroneous, the error was harmless. Garcia received the minimum Guidelines sentence of 360 months, and the government has shown that Garcia would have received the same Guidelines range of 360 months to life imprisonment without

the enhancement.[6] *See United States v. Ramos*, 71 F.3d 1150, 1158 n.27 (5th Cir. 1995) (recognizing that any error in applying a two-point enhancement would have been harmless because the defendant would have received the same Guidelines range of 360 months to life without the enhancement, and the defendant received the minimum sentence of 360 months).

2.

Second, Garcia challenges that the district court should not have applied both a two-point enhancement under § 2L1.1(b)(6) and a six-point enhancement under § 2L1.1(b)(8)(B) to his alien-harboring offenses based on the same alleged conduct—the prostitution of minor aliens. We review this challenge for plain error because Garcia objected to the § 2L1.1(b)(6) enhancement, but not the § 2L1.1(b)(8)(B) enhancement. *United States v. Olano*, 507 U.S. 725, 732 (1993). Under plain-error review, Garcia must show: (1) an error, (2) that is plain, (3) and that affected his substantial rights. *Id.* After this showing, we will exercise discretion to correct the error "'only if the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Escalante–Reyes*, 689 F.3d 415, 419 (5th Cir. 2012) (en banc) (alterations in original) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

We agree with the government that it was not error for the district court to impose both enhancements because, contrary to Garcia's claim, the enhancements do not necessarily implicate the same conduct. As noted above, we may affirm an enhancement on any ground supported by the record.

---

[6] The PSR separated the ten counts against Garcia into two groups: the first group involved the sex trafficking of minors (Counts 1-3, adjusted offense level 38), and the second group involved the harboring of minor aliens (Counts 4-10, adjusted offense level 31). The § 2L1.1(b)(6) enhancement factored into only the adjusted offense level for the harboring offenses in the second group. As the government argues, the enhancement did not factor into the first group involving sex trafficking. Rather, Garcia's sentencing range was driven by the sex trafficking offenses in the first group because those offenses carried a higher adjusted offense level. Therefore, applying the § 2L1.1(b)(6) enhancement did not affect Garcia's Guidelines range.

*Jackson*, 453 F.3d at 308 n.11.  The PSR stated that five of the eleven harbored illegal female aliens were coerced and/or otherwise forced into prostitution.  Four of them were under the age of eighteen.  The § 2L1.1(b)(6) enhancement applies to offenses that create a substantial risk of bodily injury, and therefore, we may uphold the enhancement based on the prostitution of the single harbored adult female.  § 2L1.1(b)(6).  The § 2L1.1(b)(8)(B) enhancement applies specifically to the harbored, undocumented alien minors who engaged in prostitution. § 2L1.1(b)(8)(B).  We can therefore uphold this enhancement based on acts of prostitution involving the four female victims who were under the age of eighteen.

Even assuming *arguendo* that both enhancements double-counted the same conduct, Garcia cannot show that the double-counting was error.  We have held that "[d]ouble counting is prohibited only if the particular guidelines at issue specifically forbid it."  *United States v. Barraza*, 655 F.3d 375, 384 (5th Cir. 2011) (quoting *United States v. Hawkins*, 69 F.3d 11, 14 (5th Cir. 1995) (alteration in original)).  Garcia concedes that neither the particular Guidelines at issue nor the commentary addresses whether imposing both enhancements is impermissible double-counting.[7]  Therefore, Garcia's challenge fails under plain-error review.

3.

Third, Garcia contends that the district court should not have relied on uncharged conduct involving R.J. as a separate count of conviction when calculating his Guidelines range pursuant to § 2G1.3(d)(1).  Only conduct involving the three sisters—C.M., B.Y., and D.L.—was included in his

---

[7] Further, even if the district court's double-counting was plain error, Garcia cannot show that it affected his substantial rights under the third prong of plain-error review.  As explained above, the child-sex-trafficking offenses, not the alien-harboring offenses, drove the final Guidelines range calculations.  Therefore, Garcia cannot show "with a reasonable probability that, but for the error, he would have received a lesser sentence." *United States v. Hebron*, 684 F.3d 554, 559 (5th Cir. 2012).

indictment. Because Garcia preserved his objection to the enhancement, harmless-error review applies. *Olano*, 507 U.S. at 734.

Section 2G1.3(d)(1) provides for each minor victim of a § 1591(a) offense, *inter alia*, to be treated as a separate count of conviction for sentencing purposes. § 2G1.3(d)(1). Under the Guidelines, "offense" is defined as "the offense of conviction and all *relevant conduct* under § 1B1.3 . . . unless a different meaning is specified or is otherwise clear from the context." § 1B1.3, cmt. 1(H) (emphasis added). Therefore, in Garcia's case, conduct involving R.J. can support the application of the § 2G1.3(d)(1) enhancement only if that conduct is "relevant conduct" to his offenses of conviction. Relevant conduct, as defined by § 1B1.3(a)(1)(A) and (B) encompasses "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . . during the commission of the offense of conviction." Here, the district court concluded, based on the preponderance of the evidence, that Garcia's smuggling of R.J. was relevant conduct of the child-sex-trafficking offense under § 1591(a). R.J. was smuggled into the United States illegally at the same time as C.M. and B.Y., under false pretenses, through the same trafficking scheme.

Garcia challenges the district court's determination on three grounds, each of which we conclude is unpersuasive. First, Garcia emphasizes that the government acknowledged that R.J. did not engage in any sex acts in connection with working in his bar. This point is irrelevant because, as explained above, no sex act is required under § 1591(a). Second, Garcia argues that R.J. received some wages for working in the bar, unlike the other three illegal female aliens. There is ample evidence in the record, however, that for many weeks Garcia kept and applied all of R.J.'s earned wages to her smuggling debt. Third, he argues that R.J. gave conflicting statements about whether she was over the age of eighteen. The district court concluded that R.J. was under the age of eighteen based on a copy of her birth certificate and her testimony that she was under the

11

age of eighteen when she was smuggled into the United States illegally. Therefore, we agree with the district court's determination that the uncharged conduct involving R.J. was "relevant conduct" to Garcia's sex-trafficking convictions because that determination is "plausible in light of the record reviewed in its entirety." *United States v. Solis*, 299 F.3d 420, 455 (5th Cir. 2002). Accordingly, we conclude that it was not error for the district court to rely on uncharged conduct involving R.J. as a separate count of conviction when calculating Garcia's Guidelines range pursuant to § 2G1.3(d)(1).

4.

Fourth, Garcia contends that the district court should not have grouped Counts 1-3 (involving sex trafficking of minors) separately from Counts 4-10 (involving the harboring of minor aliens) for the purposes of a multi-count adjustment under § 3D1.4. He argues that all ten counts substantially involve the same harm—the prostitution of minor illegal aliens. Because Garcia did not raise this objection before the district court, we review for plain error only. *Olano*, 507 U.S. at 732.

We conclude that the separate grouping of the ten counts was not reversible plain error. Section 3D1.2 provides four circumstances under which counts involve substantially the same harm, and thus should be grouped together. Garcia asserts that the first three are applicable in the instant case:

> (a) When counts involve the same victim and the same act or transaction.
> (b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.
> (c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

§ 3D1.2. Contrary to Garcia's assertion, prongs (a) and (b) are inapplicable here because the ten counts involve multiple victims. *See United States v. Simmons*,

649 F.3d 301, 305 (5th Cir. 2011) (holding that the district court correctly refused to group all counts in an indictment in a single group when there were multiple victims of the defendant's offenses). As to prong (c), the government claims that child sex trafficking and alien harboring are entirely different offenses. The PSR, however, used facts that formed the basis of the child-sex-trafficking counts as a specific offense characteristic to apply a six-point enhancement pursuant to § 2L1.1(b)(8)(B) under the alien-harboring counts. Therefore, Garcia's challenge has merit.

Even assuming *arguendo* that the district court's separate grouping of the counts was error, Garcia cannot show that the error affected his substantial rights under the third prong of plain-error review. As explained above, the sex-trafficking counts drove the sentencing calculations because they had a higher adjusted offense level. This adjusted level would have been the same even if the district court had placed all ten counts into a single group. Therefore, Garcia cannot show an error that affected his substantial rights because he would have received the same Guidelines range and sentence. *Hebron*, 684 F.3d at 559.

For these reasons, we conclude that there was no reversible error in the district court's calculation of Garcia's Guidelines sentence.

C.

Garcia's final claim on appeal challenges three of his six convictions for alien harboring, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii), on multiplicity grounds. Thus, it involves only $300 in total assessment fees, and does not implicate his term of imprisonment as it was imposed concurrently on all counts.

Garcia did not raise this multiplicity objection before the district court; thus, we review for plain error only. *Olano*, 507 U.S. at 732. As explained above, on plain-error review, Garcia must show: (1) an error, (2) that is plain, (3) and that affected his substantial rights. *Id.* After such a showing, we may exercise discretion to correct the error "'only if the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'"

*Escalante–Reyes*, 689 F.3d at 419 (alterations in original) (quoting *Puckett*, 556 U.S. at 135).

Garcia was indicted on two counts of alien-harboring for each sister—C.M., D.L., and B.Y.  The only difference between the counts in each pair was the location of the harboring—one count involved a house and the other involved his bar.  Garcia claims that it was error for the district court not to vacate one of the two alien-harboring convictions for each sister, alleging that the convictions involved the same offense.  The government disagrees.

The plain terms of § 1324(a)(1)(A)(iii) punish any person who:

> [K]nowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation.

§ 1324(a)(1)(A)(iii).  The ultimate issue here is whether Congress intended for "any place" to mean that each place of harboring qualifies as a separate unit of prosecution.  In other contexts, we have stressed that the meaning of the statutory term "any" can be ambiguous because it can mean "one" or "some." *United States v. Prestenbach*, 230 F.3d 780, 782–83 (5th Cir. 2000).

Even assuming *arguendo* that it was error for the district court to enter a judgment of conviction on all six alien-harboring counts, the error was not plain.  Under the second prong of plain-error review, Garcia must show a legal error that is "clear or obvious, rather than subject to reasonable dispute." *Puckett*, 556 U.S. at 135 (affirming that there is no clear or obvious error when the scope of the government's obligations under a plea agreement are open to doubt).  Both parties acknowledge that there is no precedent in our circuit, or any other circuit, defining the meaning of "any" in § 1324(a)(1)(A)(iii).  As the interpretation is an issue of first impression, we conclude that any error was not plain or obvious. *See United States v. Jackson*, 549 F.3d 963, 978 (5th Cir. 2008)

(affirming that an error was not plain when it implicated a question of first impression); *United States v. Hull*, 160 F.3d 265, 272 (5th Cir. 1998) (holding that any potential error was not plain when "[the defendant's] theory require[d] an extension of precedent").

Moreover, even assuming *arguendo* that the error was plain and affected Garcia's substantial rights, Garcia has not shown a miscarriage of justice that requires us to exercise our discretion under prong four of plain-error review. *Escalante–Reyes*, 689 F.3d at 419. Our precedent prevents us from viewing this fourth prong as automatically met, and thus requiring a correction of the error, simply because the first three prongs of plain-error review have been satisfied. *United States v. Garza*, 706 F.3d 655, 663 (5th Cir. 2013). "[E]ven if an increase in a sentence [is] seen as inevitably 'substantial' in one sense[,] it does not inevitably affect the fairness, integrity, or public reputation of judicial process and proceedings." *United States v. Ellis*, 564 F.3d 370, 378–79 (5th Cir. 2009). "[W]hether a sentencing error seriously affects the fairness, integrity, or public reputation of judicial proceedings is dependent upon the degree of the error and the particular facts of the case." *United States v. John*, 597 F.3d 263, 288 (5th Cir. 2010).

Under this case-by-case approach, we conclude that this case does not warrant the exercise of our discretion. Any potential error here does not result in a miscarriage of justice. *See Ellis*, 564 F.3d at 379 ("To conclude that not correcting the error claimed here casts doubt upon the fairness, integrity, or public reputation of the proceeding drains all content from the doctrine of plain error.").

## III.

For the foregoing reasons, Garcia's convictions and sentence are AFFIRMED.

No. 11-41097

PATRICK E. HIGGINBOTHAM, Circuit Judge, concurring in part and dissenting in part:

I concur in this well-stated opinion except in one respect. I would vacate one of the two alien-harboring convictions for each sister. Given the rule of lenity, I think the multiplicity error was plain error. *See United States v. Ogba*, 526 F.3d 214, 237–38 (5th Cir. 2008).