**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 26, 2013

No. 12-30401

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JAMAL MARTIN WALTON, also known as Meatball Walton,

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:09-CR-157-4

Before DENNIS, CLEMENT, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Defendant-appellant Jamal Walton pleaded guilty in federal district court
to conspiracy to use a firearm in relation to a crime of violence and carjacking
resulting in death. Walton entered into a plea agreement waiving his right to
a direct appeal on any grounds other than that his sentence exceeded the
statutory maximum. The district court accepted the plea agreement and
thereafter sentenced Walton to 480 months imprisonment. Walton appeals the
district court's decisions to deny requests submitted prior to sentencing to

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

withdraw the guilty plea and for withdrawal of counsel; argues that the length of his sentence violates the Eighth Amendment; and contends that the district court erred in several respects in applying the sentencing factors set forth in 18 U.S.C. § 3553(a) and the provisions of the U.S. Sentencing Guidelines. The government invokes Walton's appeal waiver as to all of his arguments save those regarding the requests to withdraw the guilty plea and to substitute counsel. Walton argues in response that the appeal waiver is invalid because not knowingly entered, or that it at least cannot bar his Eighth Amendment claims.

We conclude that the district court did not abuse its discretion in denying Walton's requests to withdraw his guilty plea and to substitute counsel. We further conclude that, assuming arguendo that Walton's appeal waiver does not bar his Eighth Amendment challenges to the length of his sentence, those unpreserved claims fail under plain error review. Finally, we conclude that the valid appeal waiver bars Walton's remaining challenges to his sentence. We therefore affirm Walton's sentence.

## I

In June 2004, Walton was arrested in connection with a carjacking and murder in New Orleans. Walton, then a seventeen-year old juvenile, was driving a car accompanied by Darnel Dorsey, Adrian McDaniel, and Adrian Alexis when he noticed a late model truck being driven by Nathaniel Robertson. Walton suggested to his passengers that they carjack Robertson's truck. Walton then drove to the home of Charles Raymond, where Walton told Raymond about the truck and asked him to bring his gun. Raymond got into the car with an assault rifle. Walton drove in pursuit of the truck and followed it to Robertson's home, where Raymond shot and killed Robertson. Dorsey drove away in Robertson's

No. 12-30401

truck, and Walton drove Raymond, McDaniel, and Alexis to Alexis's house, where McDaniel took Raymond's rifle into Alexis's yard to hide it.

As stated by the district court, "Walton has a history of developmental issues, particularly in the areas of speech, communication, language, and mental health." Following his arrest, Walton was found incompetent to proceed by the Orleans Parish Criminal District Court. He then was remanded to the Feliciana Forensic Facility for competency restoration. After three months, Walton's competency was deemed restored and thereafter he entered a guilty plea to a reduced charge of simple robbery.

However, on May 29, 2009, Walton was indicted by a federal grand jury on seven counts stemming from the same carjacking and murder. On July 2, 2010, the district court ordered that Dr. John W. Thompson conduct an evaluation of Walton's competency. On July 23, 2010, Dr. Thompson evaluated Walton and concluded that he could relate to his attorney with a reasonable degree of rational understanding, had a rational understanding of the proceedings against him, and did not have a mental disease or defect that would impair his ability to understand the proceedings or to assist in his defense. The district court held a competency hearing on August 13, 2010, during which Dr. Thompson testified and presented his evaluation. The court found Walton competent to proceed.

On September 29, 2011, Walton pleaded guilty to conspiracy to use a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(o), and carjacking resulting in the death of another person, in violation of 18 U.S.C. § 2119(3). The government agreed to dismiss the remaining five counts. The plea agreement contained an appeal waiver provision providing, inter alia, that

No. 12-30401

Walton waived any direct appeal other than "a direct appeal of any sentence imposed in excess of the statutory maximum." The district court carefully explained the terms of the plea agreement, including the appeal waiver, and confirmed that Walton understood the agreement. The district court thereafter accepted Walton's guilty plea.

On December 7, 2011, after learning that the presentence report indicated a guidelines sentence of life imprisonment, Walton filed a motion to withdraw his guilty plea. In the motion, Walton asserted that his attorney had represented to him that the government would recommend a twenty-five-year sentence and that his plea was not knowingly entered. The district court held a hearing on the issue and denied Walton's motion.

On March 29, 2012, defense counsel filed a request to withdraw, citing a purported conflict based on a letter Walton had directed to the district court asserting ineffective assistance of counsel in connection with the plea agreement. The district court again held a hearing, at which Walton indicated that he wanted to proceed with his current counsel, who likewise indicated that she was ready and willing to represent Walton at sentencing. The district court denied the motion. At sentencing, the district court exercised its discretion to vary downward from the sentencing guidelines range of life and instead sentenced Walton to 480 months imprisonment, explaining that Walton was less culpable for Robertson's death than the shooter, Raymond, and also noting Walton's comparatively young age at the time of the crime. Walton timely appealed.

## II

The government does not seek to apply the appeal waiver as a bar to Walton's arguments that the district court abused its discretion in denying his

No. 12-30401

motion to withdraw his guilty plea and counsel's  request to withdraw.  We conclude that the district court did not abuse its discretion with respect to either request.

## A

"[I]t is well settled that there is no absolute right to withdraw a guilty plea before the imposition of sentence.  The standard for determining whether or not a defendant may withdraw his guilty plea prior to sentencing is whether for any reason the granting of the privilege seems fair and just." *United States v. Minor*, 714 F.3d 319, 321 (5th Cir. 2013) (citation omitted) (quoting *United States v. Carr*, 740 F.2d 339 (5th Cir. 1984)).  "This Court reviews a district court's decision to deny a motion to withdraw a guilty plea for abuse of discretion." *United States v. McKnight*, 570 F.3d 641, 645 (5th Cir. 2009).  "In deciding whether the district court should have permitted [the defendant] to withdraw his guilty plea, this Court must consider seven factors: (1) whether [the defendant] asserted his innocence; (2) whether the Government would suffer prejudice if the withdrawal motion was granted; (3) whether [the defendant] delayed in filing his withdrawal motion; (4) whether the withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available to [the defendant]; (6) whether the original plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources." *Id.* at 645-46 (citing *Carr*, 740 F.2d at 343-44).  "The *Carr* factors are considered for the totality of the circumstances, and the district court is not required to make a finding as to each individual factor." *Id.* at 646.  "[T]he defendant has the burden of proving the withdrawal is justified" and "the trial court's decision regarding a withdrawal

motion must be accorded 'broad discretion.'" *Carr*, 740 F.2d at 344 (quoting *united States v. Morrow*, 537 F.2d 120, 146 (5th Cir. 1976)).

Walton argues that the district court abused its discretion in denying his motion to withdraw his guilty plea because (1) he did not knowingly and intelligently enter his plea; (2) he lacked the "close assistance of counsel" due to "the trial court denial of trial counsel's motion for expert funds and trial counsel's failure to advise [Walton] that he faced a life sentence under the Guidelines"; (3) he did not delay in filing his motion but rather "submitted [it] as soon as possible after receiving and evaluating [a] report from [Walton's mental health expert] Dr. Bauer and analyzing its impact on . . . the viability of a motion to withdraw" the plea; and (4) withdrawing the plea would not have caused prejudice to the government or inconvenience to the court.

The district court denied Walton's motion to withdraw his plea after a hearing and issued a thoroughly-reasoned opinion and order specifically addressing each of the *Carr* factors. As to whether Walton knowingly and voluntarily pleaded guilty, the district court explained that it "held a competency hearing on August 13, 2010 and found that Walton was competent to proceed" and further noted that "[d]uring the rearraignment proceedings on September 29, 2011, . . . [d]efense counsel . . . had no doubt that [Walton] was competent to enter a plea of guilty" and that "[b]ased upon the representations made by the defendant, his counsel, and the government, th[e] Court found that Walton was competent to plead guilty." The transcript of the plea proceeding fully supports the district court's conclusion that Walton knowingly entered his plea. The transcript indicates that, after the prosecutor had orally set forth the terms of the plea agreement, the district court confirmed that Walton's trial counsel

"ha[d] read the Plea Agreement to him line-by-line." The district court then again went over the terms of the agreement. Walton confirmed that he understood the maximum sentence he faced and that he had no questions regarding the guilty plea. He further indicated that he had not received any predictions or promises as to the sentence the district court would impose. Accordingly, the voluntariness factor does not indicate that the district court abused its discretion in denying Walton's motion to withdraw his plea.

With respect to timeliness, "[t]he longer a defendant delays in filing a withdrawal motion, the more substantial reasons he must proffer in support of his motion." *Carr*, 740 F.2d at 344. The *Carr* court explained that "[t]he rationale for allowing a defendant to withdraw a guilty plea is to permit him to undo a plea that was unknowingly made at the time it was entered. The purpose is not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *Id.* at 345; *cf. id.* at 344 ("Conversely, a prompt withdrawal may indicate that a plea was unknowingly entered in haste."). In *Carr*, we held that the defendant's withdrawal "motion was not promptly filed" where "[t]he defendant waited twenty-two days before filing his motion for withdrawal of his guilty plea — only three days before sentencing." *Id.* at 345. Here, the district court acknowledged Walton's argument that counsel needed to evaluate Dr. Bauer's report before filing the motion, but noted that "[a]t the rearraignment, just a few days [after the plea colloquy], the Court directly asked counsel, in open court, whether or not she had any difficulty communicating with Walton and/or had any doubts about his competency to plead guilty" and that counsel answered that she did not. The district court also noted that even "after

obtaining Dr. Bauer's report, Walton waited another nineteen days — until what was virtually the last minute before sentencing — to file [the] motion." The delay after counsel received Dr. Bauer's report was nearly as long as the unacceptable delay after entry of the plea in *Carr*. *See Carr*, 740 F.2d at 345. Thus, this factor too weighs against reversal.

Finally, Walton has not demonstrated an abuse of discretion based on his assertions that granting the motion to withdraw his plea would not have prejudiced the government or inconvenienced the district court. The district court found that "[a]llowing Walton to withdraw his plea . . . would [have] substantially inconvenience[d] th[e] [c]ourt and waste[d] judicial resources as it would [have] require[d] an additional trial when Walton could have been tried together with Raymond more than five months [earlier]." It is well settled that "[t]he district court's assessment of this factor is entitled to substantial deference since it is in the best position to know the effect that the withdrawal had on its resources." *Carr*, 740 F.2d at 345; *see also id.* ("[W]e do not believe that the absence of a showing of prejudice to the government, by itself, should be sufficient to mandate permission to withdraw a plea when, as here, no credible reason is proffered.").

Accordingly, we conclude that Walton has failed to demonstrate that the district court abused its discretion in denying his motion to withdraw his guilty plea.

**B**

We likewise discern no abuse of discretion with respect to counsel's initial request to withdraw, made in response to Walton's assertions to the district court that counsel had rendered ineffective assistance in connection with the

entry of his guilty plea. "Although an indigent criminal defendant has a right to be represented by counsel, he does not have a right to be represented by a particular lawyer, or to demand a different appointed lawyer except for good cause." *United States v. Young*, 482 F.2d 993, 995 (5th Cir. 1973). "Unless a Sixth Amendment violation is shown, whether to appoint a different lawyer for an indigent criminal defendant who expresses dissatisfaction with his court-appointed counsel is a matter committed to the sound discretion of the district court." *Id.*; *accord United States v. Simpson*, 645 F.3d 300, 307 (5th Cir. 2011).

The district court denied counsel's request only after Walton confirmed that, despite his previous assertions, he wanted to "stick with" his trial counsel and "want[ed] her to continue to represent [him]." The district court also confirmed with defense counsel that she "absolutely believe[d]" she could effectively represent Walton at sentencing. Walton has not demonstrated on the current record the existence of a Sixth Amendment violation regarding trial counsel's supposed representations to him during plea negotiations. *See Simpson*, 645 F.3d at 307. Nor has Walton otherwise demonstrated that the district court abused its discretion.

## III

Walton also raises several challenges to the 480-month sentence imposed by the district court. Principally, Walton argues that his sentence violates the Eighth Amendment under the Supreme Court's decision in *Graham v. Florida*, 130 S. Ct. 2011 (2010), which prohibits imposition of life without parole on juveniles for crimes other than homicide, or under *Miller v. Alabama*, 132 S. Ct. 2455 (2012), which prohibits the application of mandatory life-without-parole

sentencing schemes to juvenile offenders.  As an initial matter, and in contrast to the foregoing issues concerning Walton's and his attorney's pre-sentence requests, the government does seek to enforce the appeal waiver provision of Walton's guilty plea agreement as to Walton's challenges to his sentence.

### A

Walton first contends that the appeal waiver is unenforceable because it was not knowingly entered.  "To determine whether an appeal of a sentence is barred by an appeal waiver provision in a plea agreement, we conduct a two-step inquiry: (1) whether the waiver was knowing and voluntary and (2) whether the waiver applies to the circumstances at hand, based on the plain language of the agreement."  *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005).  "If the district court accurately explains the terms and consequences of the waiver of appeal and the defendant states on the record that he understands them, the defendant's later contention that he did not really understand will not invalidate the waiver."  *United States v. Jacobs*, 635 F.3d 778, 781 (5th Cir. 2011).  Here, the transcript of the plea hearing demonstrates that the district court carefully and accurately reviewed the terms of the plea agreement with Walton, specifically including the appeal waiver, and that Walton acknowledged that he understood the waiver without raising any question as to its meaning.  Accordingly, Walton has failed to demonstrate that the appeal waiver was not knowingly entered.  *See id.*

### B

Alternatively, Walton argues that even an otherwise valid and applicable appeal waiver may not be enforced to prevent a prisoner from challenging the

No. 12-30401

length of his sentence as exceeding statutory or constitutional limitations.[1]  In support, Walton cites a previous panel's statement that a defendant's waiver of the right to bring a federal post-conviction petition "does not preclude review of a sentence that exceeds the statutory maximum." *United States v. Hollins*, 97 F. App'x 477, 479 (5th Cir. 2004) (per curiam) (unpublished).  Walton also points to statements in opinions from other circuits to the effect that "a waiver of the right to appeal one's sentence . . . would [not] prevent a challenge . . . to an 'illegal sentence,' such as a sentence imposed in excess of the maximum penalty provided by statute or based upon a constitutionally impermissible factor such as race."  *United States v. Michelsen*, 141 F.3d 867, 872 n.3 (8th Cir. 1998).

Whether an appeal waiver may bar a prisoner from arguing on direct appeal that the length of his sentence exceeds Eighth Amendment limitations appears to be an open question in this circuit, and we need not consider the merits of that question here.  Assuming arguendo that the appeal waiver does not bar us from considering Walton's Eighth Amendment arguments, those arguments, unpreserved before the sentencing court, fail under plain error review.  *See, e.g.*, *United States v. Harris*, 434 F.3d 767, 774 (5th Cir. 2005) (assuming that unpreserved claim "survive[d] [defendant's] waiver of appeal" and concluding that the claim "ha[d] no merit" under plain error review); *see also Henderson v. United States*, 133 S. Ct. 1121, 1126 (2013) ("[A] constitutional right, or a right of any other sort, may be forfeited in criminal as well as civil

---

[1] Ordinarily, the death penalty is the maximum sentence for a conviction of carjacking resulting in death.  18 U.S.C. § 2119(3).  However, the Supreme Court's decision *Roper v. Simmons*, 543 U.S. 551 (2005), prohibits capital sentences for conduct committed by juveniles. Thus, life imprisonment was the maximum sentence that lawfully could be imposed in this case.

cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." (internal quotation marks omitted)).

Walton argues that his forty-year sentence violates the Eighth Amendment under the Supreme Court's decisions in *Graham* and *Miller*. "Under plain-error review, [the appellant] must show: (1) an error, (2) that is plain, (3) and that affected his substantial rights." *United States v. Garcia-Gonzalez*, 714 F.3d 306, 315 (5th Cir. 2013). "After this showing, we will exercise discretion to correct the error only if the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (alteration in original) (internal quotation marks omitted). "Under the second prong of plain-error review, [the appellant] must show a legal error that is 'clear or obvious, rather than subject to reasonable dispute.'" *Id.* at 318. Where an appellant's argument raises "an issue of first impression" or "require[s] an extension of precedent," this court will "conclude that any error was not plain or obvious." *Id.*

In *Graham*, the Supreme Court held that "[t]he Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." 130 S. Ct. at 2034. *Miller*, meanwhile, "hold[s] that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." 132 S. Ct. at 2469. Neither holding applies to Walton's discretionary federal sentence for a term of years. Because Walton attempts to raise novel constitutional arguments that would require the extension of precedent, he fails to demonstrate plain error. *See Garcia-Gonzalez*, 714 F.3d at 318.

No. 12-30401

## C

Finally, having determined that the appeal waiver was knowingly entered and otherwise valid, we enforce the waiver as to the remainder of Walton's arguments regarding the district court's sentencing guidelines calculation and its assessment of the statutory sentencing factors.

## IV

For the foregoing reasons, we AFFIRM the sentence imposed by the district court.