**Edwin Ike MARES, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 95–296.

Supreme Court of Wyoming.

June 10, 1997.

---

Sylvia Lee Hackl, State Public Defender; and Deborah Cornia, Appellate Counsel, for Appellant. Argument by Ms. Cornia.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Georgia L. Tibbetts, Senior Assistant Attorney General, for Appellee. Argument by Ms. Tibbetts.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

LEHMAN, Justice.

Appellant, Edwin Ike Mares, appeals the judgment and sentence of the district court convicting him of felony murder, aggravated burglary, and conspiracy to commit burglary. Mares bases his appeal on what he perceives to be the unfair application of the felony murder rule as it currently exists in Wyoming, advocating that we judicially modify the statute. In the alternative, he argues that the sentence he received was constitutionally infirm under a proportionality analysis. We vacate Mares' sentence for the underlying felony of aggravated burglary. In all other respects, the district court's order of judgment and sentence is affirmed.

Mares presents the following issues for our review:

I. Whether the Appellant should have been convicted under the felony murder rule as he did not commit, cause, solicit or aid in the homicide; he had no reason to believe that a cohort would engage in conduct likely to cause serious bodily injury or death; he was not armed with a deadly weapon and he had no reason to believe one of his companions was armed with a deadly weapon.

II. Whether the Wyoming felony-murder doctrine denies the Appellant his due process rights pursuant to the United States and Wyoming Constitutions.

III. Did the trial court err when it imposed a sentence which was disproportionate to the sentences received by the co-defendants in this case, as well as other criminals convicted of the same offense in Wyoming?

The State phrases the issues as follows:

I. Was Appellant properly convicted of the crime of felony murder?

II. Are the sentences Appellant received unconstitutionally disproportionate?

### FACTS

On November 30, 1993, Marie Bressler celebrated her 81st birthday by going to dinner with her two granddaughters. Bressler's long-time friend, 76–year–old Velma Filener, was visiting Bressler at the time but did not accompany the Bressler party to dinner. Bressler and her granddaughters left the house around 6:15 p.m. Approximately two hours later, Bressler returned to her unlocked and well-lit home and found the body of Filener lying between the laundry room and kitchen. Filener had been stabbed seventeen times, and her body had been dragged from a hallway near the entry of the home to the laundry room. The home obviously had been burglarized. The county coroner estimated Filener's time of death to be between 7:30 and 8:15 p.m.

Five months later, 16–year–old Heather Carrillo informed police and counselors at the Wyoming Girls' School that she was involved in the Bressler burglary. At Mares' trial, Carrillo testified that on November 30, 1993, she stole her mother's car and drove Victor Madrid to Bressler's home, where they met Mares and Christine Sievers. After waiting for a car to leave the residence, the four teenagers entered the residence wearing rubber gloves provided by Madrid. Once inside, the teens split up and went to different rooms. Upon hearing a female voice confront Madrid, Carrillo became scared and left the house. Carrillo testified that as she waited in the car, Mares came out of the house, followed by Sievers, and finally Madrid. Madrid was covered in blood.

Two other witnesses for the State testified that Mares told them he had been in the

Bressler home when Madrid stabbed Filener. Although Mares did not testify at his trial, during an interview with two detectives from the Casper Police Department on June 2, 1994, he confessed to participating in the crime. The detectives testified at Mares' trial. Mares told the detectives that he, Victor Madrid, Christine Sievers, and an unknown female (later identified as Carrillo) entered the Bressler residence with the intent of "doing a little burglary." Mares stated that he was in a back bedroom of the house when he heard what sounded like a woman falling down stairs and screaming. He came out of the bedroom and witnessed Madrid stabbing the victim. Carrillo immediately ran out of the house. Mares and Sievers implored Madrid to leave, but he refused and told them to "just go," and they left the house through the front door. Madrid followed them outside, and then went back inside with Sievers. Mares told the detectives that he returned to the car where Carrillo was waiting. Shortly thereafter, Madrid and Sievers returned to the car and the four left. Mares also told the detectives that Madrid stabbed Filener with a "butterfly knife" which Mares had given Madrid a few days earlier.

After a ten-day trial, the jury found Mares guilty of felony murder, aggravated burglary, and conspiracy to commit burglary for his part in the burglary of the Bressler home and the murder of Filener. He received a sentence of life imprisonment for the felony murder conviction, a concurrent term of 20 to 25 years in prison for the aggravated burglary conviction, and a consecutive term of 4 to 5 years in prison for conspiracy. He timely appeals the judgment and sentence.

## DISCUSSION

### I. Affirmative Defense

Mares argues that because the stabbing was a purely independent act of a co-felon, the rigid application of the felony murder doctrine, resulting in a life sentence, is unduly harsh. Mares advocates we adopt an affirmative defense to felony murder which would apply if a defendant satisfies a list of conditions refuting the defendant's culpability for the killing. Several jurisdictions have statu-

torily created a no-culpability-as-to-the-homicide defense, with the most common conditions being that the defendant 1) did not commit the homicidal act or in any way cause, solicit, or aid the commission thereof, 2) had no reason to believe that any other participant would engage in conduct likely to cause death or serious bodily injury, 3) was not armed with a deadly weapon, and 4) had no reason to believe that any other participant was armed with such a weapon. Paul H. Robinson, 1 CRIMINAL LAW DEFENSES § 104, at 504–05 (1984); Wayne R. LaFave & Austin W. Scott, Jr., CRIMINAL LAW § 7.5(c), at 624 (2nd ed.1986).

The legislature abolished common law crimes in Wyoming, but chose to retain common law defenses unless provided otherwise by statute. W.S. 6–1–102 (1988). Therefore, our first inquiry is whether the defense proposed by Mares is recognized in Wyoming by statute or judicial decision. *Bouwkamp v. State*, 833 P.2d 486, 490 (Wyo.1992). Mares contends that although we have not explicitly adopted the defense, the defense is inherent in our prior felony murder decisions because in each of those decisions at least one of the four elements for the affirmative defense was not satisfied. In other words, our prior cases involved situations where the defendant carried out or participated in the murderous act, was armed, or knew that one or more of the participants was armed. *See Jansen v. State*, 892 P.2d 1131, 1133–34 (Wyo.1995) and cases cited therein. However, the fact that one or more elements of the defense was not satisfied does not mean that the court would have reached a different result if all the elements had been met, and we find no discussion or analysis in any of our prior felony murder cases which would lead us to conclude otherwise.

■ Two Wyoming felony murder cases addressed the issue of a defendant's individual culpability, both in the context of the death penalty. In *Engberg v. State*, 686 P.2d 541 (Wyo.1984), the appellant argued that pursuant to the United States Supreme Court decision of *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), the court has the duty of appraising the culpability of a defendant sentenced to death. A

similar argument was made in *Osborn v. State*, 672 P.2d 777 (Wyo.1983). *Enmund* held that a capital sentence could not be imposed upon an accomplice convicted under a felony murder theory if the accomplice "does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." 458 U.S. at 797, 102 S.Ct. at 3376–77. In both *Engberg* and *Osborn*, the court found *Enmund* inapposite because the appellants in those cases actually killed their victims. *Engberg*, 686 P.2d at 551; *Osborn*, 672 P.2d at 794. We have not had occasion to apply *Enmund*, much less expand its holding to include noncapital cases. The no-culpability defense and/or its individual elements simply have not been considered in Wyoming, and we reject the suggestion that the defense has been implicitly accepted.

Further, Mares does not provide, nor does our own research reveal, any authority that the proffered defense is a recognized common-law defense in any other jurisdiction. The jurisdictions that have created a no-culpability-as-to-the-homicide defense for felony murder have done so legislatively, not judicially. *See* ROBINSON, *supra*, at 507 & 85 (Supp.1997), n. 8 (listing statutes which provide no-culpability defense).

■ The felony murder rule is the subject of much criticism for its potential harshness, for instance in the circumstance where the killing is an independent act of a co-felon, as in Mares' case. *Id.* at 503–04; LAFAVE & SCOTT, *supra*, at 622–40; Nelson E. Roth & Scott E. Sundby, *The Felony–Murder Rule: A Doctrine at Constitutional Crossroads*, 70 CORNELL L.REV. 446, 446–48 (1985). Adopting an affirmative defense is but one of many mechanisms that other jurisdictions have utilized to mitigate the potential harshness of the rule. For example, the rule has been limited by permitting its use only as to certain types of felonies, by strictly interpreting the requirement of proximate or legal cause, by narrowly construing the time period during which the felony is committed, by downgrading the offense to a lesser degree crime,

and by requiring a *mens rea* of malice. LA-FAVE & SCOTT, *supra;* ROTH & SUNDBY, *supra; see also* W.E. Shipley, Annotation, *Judicial Abrogation of Felony–Murder Doctrine*, 13 A.L.R.4th 1226 (1982); *People v. Aaron*, 409 Mich. 672, 299 N.W.2d 304, 313–16 (1980). Wyoming has narrowed the scope of the felony murder rule by limiting its application to "crimes of violence" which are enumerated in W.S. 6–2–101(a); *Cook v. State*, 841 P.2d 1345, 1351 (Wyo.1992). Additionally, the legislature has considered the culpability issue with regard to sentencing. Wyoming Statute 6–2–102(j)(iv) (Supp.1996) provides that if the defendant was an accomplice in a murder committed by another person and his participation in the homicidal act was relatively minor, that shall count as a mitigating circumstance in determining whether the defendant should be sentenced to death. In our view, the determination of whether the felony murder doctrine should be further limited in Wyoming and, if so, the appropriate manner of so doing, are matters for the legislature. Consequently, we decline to judicially adopt appellant's suggested affirmative defense to felony murder.

## II. Mens Rea

■ At the time of the offense, Wyoming's first degree murder statute provided:

(a) Whoever purposely and with premeditated malice, or in the perpetration of, or attempt to perpetrate, any sexual assault, arson, robbery, burglary, escape, resisting arrest or kidnapping, kills any human being is guilty of murder in the first degree.

W.S. 6–2–101(a) (Supp.1993)[1]. Under this provision, when a killing arises out of one of the enumerated felonies, it makes no difference whether or not there was an intent to kill. *Bouwkamp*, 833 P.2d at 491 (*citing Richmond v. State*, 554 P.2d 1217, 1232 (Wyo.1976)). Mares argues that the failure to require that the State prove a defendant acted with malice violates due process. He asserts that felony murder should require an intent to kill or the intent to do an act greatly dangerous to the lives of others or

---

1. This statute was amended July 1994, adding an additional enumerated offense of "abuse of a child under the age of sixteen (16) years."

with knowledge that the act creates a strong probability of death or great bodily harm.

Mares' due process challenge appears to be based on *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), in which defendant's conviction was reversed because of a jury instruction which stated that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts." 442 U.S. at 512, 524, 99 S.Ct. at 2453, 2459. The instruction was found to shift the burden of persuasion to the defendant and invade the factfinding function of the jury. 442 U.S. at 523, 99 S.Ct. at 2459. As a result, the Court held that, in the case where intent is an element of the crime charged, such an instruction violates the Fourteenth Amendment's requirement that the State prove every element of a crime beyond a reasonable doubt. 442 U.S. at 512, 524, 99 S.Ct. at 2453, 2459. Mares' argument, then, is that the felony murder rule violates this constitutional requirement because it presumes the mental state required for murder from the intent required for the underlying felony.

▉▉▉▉ Mares directs us to *State v. Ortega*, in which the New Mexico Supreme Court, relying in part on *Sandstrom*, held that New Mexico's felony murder statute requires proof that the defendant intended to kill or was knowingly heedless that his or her acts created a strong probability of death or great bodily harm. *Ortega*, 112 N.M. 554, 817 P.2d 1196 (1991). The relevant language in New Mexico's statute provides:

A. Murder in the first degree is the killing of one human being by another without lawful justification or excuse, by any of the means with which death may be caused: * * *

(2) in the commission of or attempt to commit any felony * * *.

N.M. STAT. ANN. § 30–2–1(A)(2) (Michie 1984). We find the dissent in *Ortega* persuasive and more in line with our previous holdings in Wyoming. The dissent considered *Sandstrom* inapposite because the New Mexico statute does not require an intent to kill where a killing has been committed during a felony. *Id.* at 1218–19 (Baca, J., concurring in part, dissenting in part). In *Osborn v.*

*State*, we pointed out that viewing the commission of the statutory felony as the legal equivalent of the malice and premeditation required for first degree murder is a legal fiction that is unnecessary under our statute:

[T]he Wyoming Statute, § 6–4–101 * * *, does not relate the killing of a human being in the perpetration of robbery (or the other crimes listed) to "purposely and with premeditated malice," but separated that clause with an "or." The legislature has thus merely labeled the latter crime as first degree murder because it is considered to be of equal wickedness justifying the ultimate penalty.

*Osborn*, 672 P.2d at 794. The felony murder statute imposes a form of strict responsibility on those perpetrating the underlying felony for killings occurring during the commission of that felony; the intent to kill is not an element of the crime. *Jansen v. State*, 892 P.2d at 1138. Even so, the State is not relieved of establishing a *mens rea*. Rather, the necessary intent the State must prove to convict a person of felony murder is the intent associated with the underlying felony. *Id.*; *Jones v. State*, 568 P.2d 837, 844 (Wyo. 1977).

Mares also directs us to *People v. Aaron*, 409 Mich. 672, 299 N.W.2d 304, in which the Michigan Supreme Court held that malice, defined as "the intention to kill, the intention to do great bodily harm, or the wanton and willful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm," is an essential element of felony murder. *Id.* at 326. However, the Michigan statute provides that "murder" committed in the perpetration of specified crimes is murder in the first degree. The court determined that the statute's purpose is to raise an already established murder to the level of first degree. *Id.* at 321–22. Although "murder" is undefined in the Michigan statutes, case law had established that malice aforethought is an essential element of murder. *Id.* at 326. Therefore, the Michigan court reasoned that the legislature intended a conviction for felony murder to require a finding of malice. *Id.* Wyoming's statute provides that a "killing" in the course of one of the enumerated felo-

nies is first degree murder. The difference in statutory language is dispositive, for malice is not an essential element of "killing." BLACK'S LAW DICTIONARY 734, 870 (6th ed.1990). As a result, the analysis used by the *Aaron* court to reach the conclusion that felony murder requires a *mens rea* of malice is not applicable to our statute.

■■■ There is no question the legislature has the authority to revise the current statute to include a *mens rea* of malice for killings occurring during the perpetration of a felony. The legislature has the exclusive power to determine and declare what acts shall constitute crimes. *Billis v. State*, 800 P.2d 401, 415 (Wyo.1990). Our judicial task is to effectuate the statute as written. *Id.* at 415–16. The wisdom or desirability of a change in the felony murder rule is solely a matter for the consideration of the legislature and, accordingly, arguments concerning the addition of elements to the statute should be addressed to the legislature, not this court.

### III. Sentence

A defendant convicted of first degree murder in Wyoming shall be sentenced to life imprisonment or death, pursuant to W.S. 6–2–101(b) (Supp.1993). Mares received a sentence of life imprisonment for the felony murder conviction. He also received a concurrent term of 20 to 25 years in prison for the aggravated burglary conviction and a consecutive term of 4 to 5 years in prison for conspiracy, both of the latter sentences within the parameters set by the legislature for those crimes. W.S. 6–3–301(a), (b) (1988); W.S. 6–1–304 (1988). Mares contends that the court abused its discretion and violated his constitutional rights by treating him more harshly than his codefendants as well as other persons in Wyoming who have been convicted of felony murder where the underlying felony is burglary.

■■■ At the outset, the State concedes, and we agree, that the sentence imposed for the aggravated burglary conviction, which was the underlying felony for purposes of the felony murder conviction, was improper. In Wyoming, multiple punishments for felony murder and the underlying felony are impermissible and such a sentence is error. *Roderick v. State*, 858 P.2d 538, 552 (Wyo.1993); *Castle v. State*, 842 P.2d 1060, 1061 (Wyo. 1992); *Cook v. State*, 841 P.2d at 1352–53. As a result, we vacate the sentence of 20 to 25 years on Mares' aggravated burglary conviction. *Castle*, 842 P.2d at 1061.

■■■ Remaining for our consideration are the life sentence for the felony murder conviction and the prison term of 4 to 5 years for conspiracy to commit burglary. In Wyoming, a life sentence for first degree murder equates to a life sentence without eligibility for parole. *See* W.S. 7–13–402 (1995); *Weldon v. State*, 800 P.2d 513, 514 (Wyo.1990). Mares contends his sentence violates the Eighth Amendment prohibition against cruel and unusual punishment and urges we undertake the proportionality analysis utilized by the United States Supreme Court in *Solem v. Helm*, 463 U.S. 277, 292, 103 S.Ct. 3001, 3011, 77 L.Ed.2d 637 (1983):

> In sum, a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

We do not undertake a lengthy analysis under all three of the *Solem* criteria except in cases where a comparison of the crime with the sentence gives rise to an inference of gross disproportionality. *Smith v. State*, 922 P.2d 846, 849 (Wyo.1996) (*citing Harmelin v. Michigan*, 501 U.S. 957, 1005, 111 S.Ct. 2680, 2707, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring)).[2] In making that threshold determination, the court will look to the gravity of the offense and the procedures and circumstances under which the sentence is imposed. *Smith*, 922 P.2d at 849.

■■■ Mares' primary contention is that the relative length of his sentence is extreme

---

**2.** *Harmelin* was a plurality opinion. Two justices in *Harmelin* would have limited proportionality review to capital cases. 501 U.S. at 994, 111 S.Ct. at 2701.

when compared to the gravity of the offense, which he describes as "merely [ ] involvement in a simple burglary." The offenses for which Mares was convicted resulted in the death of another human being. This court has previously rejected the argument that the death penalty is disproportionate to the crime of murder committed in the course of a robbery. *Osborn*, 672 P.2d at 794. We likewise find no inference of gross disproportionality when we compare Mares' crimes, conspiracy to commit burglary and murder committed in the course of that burglary, to his sentence for those crimes, life without possibility of parole. *See Harmelin*, 501 U.S. at 961–62, 992–94, 111 S.Ct. at 2684, 2700–01 (no proportionality analysis undertaken where defendant received a mandatory life sentence without possibility of parole for possessing 672 grams of cocaine). Consequently, a proportional analysis of Mares' sentence compared with others in Wyoming or across the country is not required.

■ Mares' challenge is aimed, at least in part, at the disparity in charging the participants in this crime. Charging decisions fall within the discretion of the prosecuting attorney, *Billis v. State*, 800 P.2d at 417–18, and are not subject to a proportionality analysis. Absent evidence that a charging decision was based on some unjustifiable standard, it is not subject to our review. *Id.*

Mares' life sentence for felony murder and the consecutive sentence of 4 to 5 years for aggravated burglary stand as imposed.

### CONCLUSION

We decline to judicially modify the felony murder rule in Wyoming by adopting an affirmative defense or establishing a *mens rea* of malice. We vacate the sentence of 20 to 25 years for aggravated burglary and affirm the life sentence for felony murder and the 4 to 5 year sentence for conspiracy to commit burglary. Affirmed as modified.