NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0134n.06

No. 12-4040

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 18, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JAMES GOINS, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| Petitioner-Appellant, | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| v. | ) | |
| | ) | |
| KEITH SMITH, Warden, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

**Before:  SILER, MCKEAGUE, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.**  Petitioner James Goins appeals the district

court's denial of his petition for a writ of habeas corpus.  Goins was convicted of attempted

murder, aggravated burglary, aggravated robbery, kidnapping, and felonious assault by an

Ohio state-court jury; four of the counts included gun specifications.  The state trial court

sentenced Goins to consecutive prison terms for the various offenses totaling 85 ½ years.

On appeal, the Ohio Seventh District Court of Appeals revised Goins sentence down to

seventy-four years.  The Ohio Supreme Court vacated and remanded for resentencing.  On

remand, the trial court resentenced Goins to an aggregate term of eighty-four years'

imprisonment.  The Ohio Seventh District Court of Appeals affirmed the sentence, and the

1

Ohio Supreme Court denied leave to appeal. On July 7, 2009, Goins filed this timely petition pursuant to 28 U.S.C. § 2254. We AFFIRM.

**I.**

We adopt the following facts and procedural history as set forth by the district court:

On March 12, 2002, an Ohio state-court jury convicted Goins on eleven criminal counts stemming from his participation in two violent home-invasion robberies on January 29, 2001. *State v. Goins*, No. 02–CA–68, 2005 WL 704865, at *21 (Ohio Ct. App. Mar. 21, 2005) (*Goins I*). The evidence at trial showed that Goins and an accomplice, Chad Barnette—both sixteen-years-old at the time—attacked eighty-four-year-old William Sovak as he was picking up his morning newspaper. *Id.* at *1. The two pushed Sovak "back into his home, repeatedly hit and kicked him, [] knocked him to the ground many times," and hit him "on the head with his telephone." *Id.* Goins and Barnette then pushed Sovak "down the stairs to his basement" (at this point, Sovak lost consciousness), dragged him into a fruit cellar, and locked the door to prevent escape. *Id.* Sovak wasn't discovered until later that evening, after a neighbor reported seeing "blood all over" Sovak's house. *Id.* Sovak "sustained a punctured lung, broken ribs and other broken bones." *Id.*

Later that day, Goins and Barnette broke into another home in the same neighborhood. *Id.* In coming upon the residents—sixty-four-year-old (and wheelchair-bound) Louis Luchisan and his wife, Elizabeth—Goins and Barnette demanded money and threatened to kill the Luchisans if they did not comply. *Id.* To prove that they were serious, the two youths "hit Mr. Luchisan over the head with a plate" and "hit Mrs. Luchisan with a telephone." *Id.* And one of the two assailants carried a firearm as they led the Luchisans around the house in a search for money. *Id.* All this brutal treatment for $187, for a 27 [inch] television set, and for the keys to the Luchisans' blue Chevy Malibu. *Id.*

On February 5, 2001, the Youngstown, Ohio, Police Department filed a twelve-count juvenile-delinquency complaint against Goins, alleging that he had committed attempted murder, aggravated burglary, aggravated robbery, kidnapping, and felonious assault. [] The juvenile court bound the case over to the Mahoning County Grand Jury, which indicted Goins on the same twelve counts. [] Goins was tried as an adult, and was convicted on all but one count.

[T]he state trial court sentenced Goins to the maximum sentence for each count of conviction, all to run consecutively, for a total aggregate prison term of eighty-five-and-a half years. [] The sentencing judge explained: "It is the intention of this Court that you should not be released from the penitentiary and the State of Ohio during your natural li[fe]." []

\*      \*      \*

Goins appealed his sentence, arguing (1) that the bindover process from juvenile court violated due process; (2) that the trial court's decision to admit purported scientific evidence without first determining its scientific reliability violated due process; (3) that the trial court's decision to allow a witness—Dr. Louis Maddox—to testify about DNA tests performed by others violated the Sixth Amendment; (4) that he was denied the effective assistance of counsel; and (5) that his lengthy sentence was cruel and unusual punishment in violation of the Eighth Amendment. [] The Ohio Seventh District Court of Appeals generally rejected Goins's claims, but did revise his sentence down to seventy-four years after concluding that the trial court had incorrectly applied Ohio's merger doctrine and had failed to justify imposing the maximum sentence for one of the aggravated-robbery charges. *Goins I*, 2005 WL 704865, at \*21.

Goins then appealed to the Ohio Supreme Court, again arguing that his sentence constituted cruel and unusual punishment []. . . . The Ohio Supreme Court, accepting the appeal only as to Goins's sentence, vacated and remanded for resentencing consistent with its decision in *State v. Foster*, [] 845 N.E.2d 470 (Ohio 2006) (severing as unconstitutional portions of Ohio's sentencing statutes permitting harsher sentences based on facts found by the sentencing judge rather than the jury and giving trial courts discretion to impose any sentence within the statutory range without first making any findings). *In re Ohio Criminal Sentencing Statutes Cases*, [] 847 N.E.2d 1174 (Ohio 2006), *resolving State v. Goins*, [] 833 N.E.2d 1246 (Ohio 2005) (*Goins II*) (table).

On remand, the trial court resentenced Goins to an aggregate term of eighty-four years' imprisonment—again, the maximum possible under Ohio law. And Goins again appealed, arguing that this sentence, too, violated (1) the Eighth Amendment, because it was effectively a life sentence without the possibility of parole; and (2) Ohio law, by unnecessarily burdening the state's resources. [] The Ohio Seventh District Court of Appeals affirmed the sentence, *State v. Goins*, No. 06–MA–131, 2008 WL 697370 (Ohio Ct. App. Mar. 10, 2008) (*Goins III*), and the Ohio Supreme Court denied leave to appeal, *State v. Goins*, [] 889 N.E.2d 1027 (Ohio 2008) (*Goins IV*) (table).

3

*Goins v. Smith*, No. 4:90–CV–1551, 2012 WL 3023306, at *1–2 (N.D. Ohio July 24, 2012).

The district court referred Goins's petition to a magistrate judge who recommended that the court deny Goins's petition. *Id.* Goins objected, asserting that in light of *Graham v. Florida*, 560 U.S. 48 (2010), his eighty-four-year sentence violates the Eighth Amendment's prohibition on cruel and unusual punishment. The district court overruled Goins's objections, adopted the magistrate judge's report and recommendation, and denied Goins's petition. On appeal, Goins argues that his aggregate sentence violates the Eighth Amendment's prohibition on cruel and unusual punishment.

## II.

This court reviews a district court's decision to grant or deny a writ of habeas corpus de novo. *Linscott v. Rose*, 436 F.3d 587, 590 (6th Cir. 2006). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a habeas petitioner is not entitled to relief unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on materially indistinguishable facts." *Boykin v. Webb*, 541 F.3d 638, 642 (6th Cir. 2008) (citing *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the

4

correct legal principle from the Supreme Court's decisions but unreasonably applies it to the facts of the petitioner's case." *Id.* (citing *Williams*, 529 U.S. at 412–13).

## A.

In *Graham,*[1] the Supreme Court held that the Eighth Amendment "prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide. A State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him . . . with some realistic opportunity to obtain release before the end of that term." 560 U.S. at 82.[2] Two years later, in *Miller v. Alabama*, 132 S. Ct. 2455, 2464 (2012), the Court held that *mandatory* life sentences for juvenile offenders, even those sentenced for murder, violate the Eighth Amendment. *Id.*[3] *Miller* did not reach

---

[1]*Id*. The parties do not dispute that *Graham* applies because it sets forth a new rule prohibiting a certain category of punishment for a class of defendants and can therefore be raised on collateral review notwithstanding *Teague v. Lane*, 489 U.S. 288 (1989).

[2]In adopting a categorical rule that life without parole sentences for juveniles who committed nonhomicide offenses violates the Eighth Amendment, the Supreme Court in *Graham* found that a national consensus has developed against the sentencing practice, and the practice does not serve legitimate penological goals, explaining, "because juveniles have lessened culpability they are less deserving of the most severe punishments," (citing *Roper v. Simmons*, 543 U.S. 551, 569 (2005)). . . . "These salient characteristics mean that '[i]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.'" *Graham*, 560 U.S. at 68 (quoting *Roper*, 543 U.S. at 573). "Accordingly, 'juvenile offenders cannot with reliability be classified among the worst offenders.'" (quoting *Roper*, 543 U.S. at 569). "[D]evelopments in psychology and brain science continue to show fundamental differences between juvenile and adult minds. For example, parts of the brain involved in behavior control continue to mature through late adolescence." *Id.* (citing Brief for American Medical Association et al. as *Amici Curiae* 16–24; Brief for American Psychological Association et al. as *Amici Curiae* 22–27).

[3]In finding a violation of the Eighth Amendment, the *Miller* Court observed:

*Roper* and *Graham* establish that children are constitutionally different from adults for purposes of sentencing. Because juveniles have diminished

5

the question whether the Eighth Amendment requires a categorical ban on life-without-parole sentences for juveniles. Nor did *Miller* foreclose sentencing courts from imposing such sentences in homicide cases. *Id*. at 2469. The Court did, however, warn:

> But given all we have said in *Roper*, *Graham*, and this decision about children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon. That is especially so because of the great difficulty we noted in *Roper* and *Graham* of distinguishing at this early age between "the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption." *Roper*, 543 U.S., at 573, 125 S. Ct. 1183; *Graham*, 560 U.S., at ——, 130 S. Ct., at 2026–2027. Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.

*Id*.

Soon after *Miller* was decided, this court addressed *Graham*'s application to aggregate consecutive sentences in *Bunch v. Smith*, 685 F.3d 546, 550 (6th Cir. 2012), *cert. denied*, *Bunch v. Bobby*, 133 S. Ct. 1996 (2013), and held that *Graham* did not clearly establish that consecutive, fixed-term sentences for juveniles who commit multiple non-

culpability and greater prospects for reform, we explained, "they are less deserving of the most severe punishments." *Graham*, []130 S. Ct. at 2026. Those cases relied on three significant gaps between juveniles and adults. First, children have a "'lack of maturity and an underdeveloped sense of responsibility,' leading to recklessness, impulsivity, and heedless risk-taking." *Roper*, 543 U.S. at 569 []. Second, children "are more vulnerable . . . to negative influences and outside pressures," including from their family and peers; they have limited "contro[l] over their own environment" and lack the ability to extricate themselves from horrific, crime-producing settings. *Ibid*. And third, a child's character is not as "well formed" as an adult's; his traits are "less fixed" and his actions less likely to be "evidence of irretrievabl[e] deprav[ity]." *Id*. at 570.

*Miller v. Alabama*, 132 S. Ct. at 2464.

6

homicide offenses are unconstitutional, even when they amount to the practical equivalent

of life without parole.[4] Addressing Bunch's consecutive, fixed-term sentence of eighty-nine

years for multiple non-homicide offenses, this court held:

> Bunch's sentence was not contrary to clearly established federal law even if *Graham* is considered part of that law. While Bunch claims that his sentence runs afoul of *Graham*, that case did not clearly establish that consecutive, fixed-term sentences for juveniles who commit multiple nonhomicide offenses are unconstitutional when they amount to the practical equivalent of life without parole.

> \*     \*     \*

> This conclusion is further supported by the fact that courts across the country are split over whether *Graham* bars a court from sentencing a juvenile nonhomicide offender to consecutive, fixed terms resulting in an aggregate sentence that exceeds the defendant's life expectancy. Some courts have held that such a sentence is a de facto life without parole sentence and therefore violates the spirit, if not the letter, of *Graham*. *See, e.g., People v. J.I.A.*, 127 Cal. Rptr.3d 141, 149 (2011); *People v. Nunez*, 125 Cal. Rptr.3d 616, 624 (2011). Other courts, however, have rejected the de facto life sentence argument, holding that *Graham* only applies to juvenile nonhomicide offenders expressly sentenced to "life without parole." *See, e.g., Henry v. State*, 82 So.3d 1084, 1089 (Fla. Ct. App. 2012); *State v. Kasic*, 228 Ariz. 228, 265 P.3d 410, 415 (App. 2011). This split demonstrates that Bunch's expansive reading of *Graham* is not clearly established. Perhaps the Supreme Court, or another federal court on direct review, will decide that very lengthy, consecutive, fixed-term sentences for juvenile nonhomicide offenders violate the Eighth Amendment. But until the Supreme Court rules to that effect, Bunch's sentence does not violate clearly established federal law.

---

[4]The defendant in *Bunch* was convicted of robbing, kidnaping, and repeatedly raping a young woman when he was sixteen-years old, and was sentenced to consecutive, fixed terms totaling 89 years. 685 F.3d at 547. Bunch's habeas petition asserted that the trial court violated the Eighth Amendment by sentencing him to "the functional equivalent of life without parole" in contravention of the intervening holding in *Graham*. *Id*.

*Id*. at 550, 552.[5]

The district court applied *Bunch* to the instant case and concluded that "[b]ecause Goins's sentence is not technically a sentence to life imprisonment without the possibility of parole, *Graham*'s categorical rule does not 'clearly' apply to him." *Goins*, 2012 WL 3023306, at *6 (citing 28 U.S.C. § 2254(d)). The district court further observed:

> Perhaps more important, the Ohio General Assembly has changed Ohio's sentencing law to markedly improve Goins's ability to pursue release. In particular, Ohio law now permits a defendant to request judicial release after he has served a portion of his sentence. Accordingly, Goins now faces a mandatory prison term of 42 or 45 years, after which he will be able to apply for judicial release. [Doc. 23; 25 ]. *See* Ohio H. 86, 129th Gen. Assembly (eff. Sept. 30, 2011) (amending Ohio Rev. Code § 2929.20 to permit offenders to file a motion for judicial release with the sentencing court after the later of one-half of their stated prison terms or five years after expiration of their mandatory prison terms). Although he faces an extremely long sentence, Goins does not face a sentence on the order of the one imposed in *Graham*.

*Id*. at *7.

**B.**

---

[5]Several additional courts have addressed the issue in the interim, and the decisions continue to be split. The Ninth Circuit recently held that aggregate consecutive sentences of 254 years for a juvenile non-homicide offender are "materially indistinguishable" from the life sentence without parole at issue in *Graham*. *Moore v. Biter*, 725 F.3d 1184, 1191–92 (9th Cir. 2013). Similarly, in *Thomas v. Pennsylvania*, No. 10–4537, 2012 WL 6678686, *2 (E.D. Pa. Dec. 21, 2012), the district court held that the imposition of aggregate consecutive sentences of 65–to–150 years with eligibility for parole at age 83 on a juvenile non-homicide offender (more than a decade beyond his life expectancy) was unconstitutional under *Graham*. In contrast, in *United States v. Walton*, No. 12–30401, 2013 WL 3855550, *6 (5th Cir. July 26, 2013) (unpublished), *cert. denied*, *Walton v. United States*, No. 13-7111, 2013 WL 5810157, *1 (Dec. 2, 2013), the Fifth Circuit held that a forty-year sentence imposed on a juvenile for conspiracy to use a firearm in relation to a crime of violence and car jacking resulting in death was not an Eighth Amendment violation under *Graham* or *Miller*.

8

*Bunch* is controlling. Further, even if we were to apply *Graham* to Goins's consecutive, fixed-term sentence for multiple offenses, the district court correctly observed that Goins's meaningful opportunity for parole renders *Graham* inapplicable. *See Graham*, 560 U.S. at 82.

## C.

Goins additionally argues that the state appellate court's decision was objectively unreasonable because it failed to correctly apply the proportionality analysis required when sentencing a juvenile, arguing that a state court's failure to conduct an inquiry required by clearly established federal law constitutes an unreasonable application of that law under § 2254(d)(1). *See Wiggins v. Smith*, 539 U.S. 510, 527–28 (2003) (holding that in deferring to counsel's unreasonable decision to limit the scope of investigation into potential mitigating evidence, the state court of appeals unreasonably applied law clearly established in *Strickland v. Washington*, 466 U.S. 668, 690–91 (1984)).

But consideration of a juvenile's diminished culpability is not a clearly established aspect of the proportionality requirement recognized by the Supreme Court in *Solem v. Helm*, 463 U.S. 277, 290 (1983). Similarly, in *Roper* and *Graham*, although the Supreme Court took the juveniles' diminished culpability into consideration in holding that the death penalty (*Roper*) and life in prison without parole for a non-homicide offense (*Graham*) are categorical violations of the Eighth Amendment, neither case held that a juvenile's diminished culpability must be a factor in a term-of-years proportionality analysis. Further, although *Miller* observed that "*Graham, Roper*, and our individualized sentencing decisions make clear that a judge or jury must have the opportunity to consider mitigating

9

circumstances before imposing the harshest possible penalty for juveniles," 132 S. Ct. at 2475, and this language certainly counsels in favor of considering juveniles' diminished culpability in imposing consecutive term-of-years sentences, *Miller* does not clearly require such an approach where a juvenile faces an aggregate term-of-years sentence. Thus, applying AEDPA, the state appellate court did not unreasonably apply clearly established federal law in failing to require that the sentencing court factor Goins's juvenile status into his sentence.

## III.

For these reasons, we AFFIRM the decision of the district court.