NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0494n.06

No. 14-6230

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 23, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| BRIAN A. STARKS, | ) | |
| | ) | |
| **Petitioner-Appellant,** | ) | |
| | ) | **ON APPEAL** FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| JOE EASTERLING, Warden, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| **Respondent-Appellee.** | ) | **OPINION** |
| | ) | |

BEFORE: NORRIS, McKEAGUE, and WHITE, Circuit Judges.

ALAN E. NORRIS, Circuit Judge. Tennessee prisoner Brian Starks was sentenced to a mandatory term of life imprisonment for felony murder, as well as a consecutive term of eleven years for attempted especially aggravated robbery. Petitioner was seventeen years old when he received this sentence. He will be eligible for parole when he reaches seventy-seven. Because that age exceeds the life expectancy of African American males, especially those who have been incarcerated, petitioner contends that the sentence violates the Eighth Amendment in light of *Miller v. Alabama*, 132 S. Ct. 2455 (2012).

**I.**

The underlying facts that led to petitioner's prosecution are not critical to the legal issue presented on appeal. A detailed summary of the unfortunate events can be found in the opinion of the Tennessee Court of Criminal Appeals. *State v. Starks*, 2003 WL 1877084, at *1 (Tenn. Crim. App. Apr. 15, 2003). Briefly, on January 18, 1999, petitioner and two friends went to a Nashville housing project to sell crack cocaine. Petitioner carried a gun. The victim, Julius

Talley, approached the group to buy crack. Although they initially rebuffed Talley, the group subsequently attempted to rob him after he left the apartment of a known drug supplier. Talley told them he had neither money nor crack. Nonetheless, they pushed him to a dumpster and petitioner shot him several times.

The three individuals were charged with felony murder and attempted especially aggravated robbery. Only petitioner elected to go to trial and he was found guilty on both counts. As already mentioned, he received a mandatory life sentence for felony murder, Tenn. Code. Ann. § 39-13-204, which in Tennessee requires an individual to serve fifty-one years in prison before eligibility for parole. The trial court also imposed a consecutive eleven-year term of incarceration for especially aggravated robbery. Tenn. Code Ann. § 39-13-403. As mentioned, petitioner will not be eligible for parole until February 12, 2059, when he will be seventy-seven years old.

His convictions were affirmed on direct appeal. On June 23, 2011, petitioner filed a *pro se* habeas petition. After counsel was appointed, three amended petitions were filed. The district court denied relief on all claims. *Starks v. Easterling*, 2014 WL 4347593, at *11 (M.D. Tenn. Sept., 2, 2014). However, it granted a certificate of appealability on one claim: whether the sentence violates the Eighth Amendment in light of *Miller v. Alabama*, 132 S. Ct. 2455 (2012). *Id.* This appeal followed.

While the federal habeas proceedings were ongoing, petitioner filed a petition for post-conviction relief in state court, raising the *Miller* claim. The trial court denied relief and was affirmed by the court of criminal appeals. Permission to appeal was denied by the Tennessee Supreme Court. These decisions preceded the denial of habeas relief in the district court.

**II.**

This court reviews the district court's legal conclusions de novo and factual findings for clear error. *Trimble v. Bobby*, 804 F.3d 767, 773 (6th Cir. 2015). In this case, there is no factual dispute and we review de novo.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") applies in this case. If the claim was adjudicated on the merits in the state courts, a district court may not grant habeas relief unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

As already noted, the Tennessee trial court and the court of criminal appeals addressed petitioner's Eighth Amendment claim in post-conviction proceedings. Both courts reached the merits of the claim. The trial court read *Miller* narrowly: because petitioner did not receive a sentence that precluded parole, he had no viable claim. The court of criminal appeals agreed with this decision without further elaboration.

In the past decade, the Supreme Court has issued several opinions in addition to Miller that discuss the Eighth Amendment's prohibition of cruel and unusual punishment as it applies to juvenile offenders. *See, e.g., Roper v. Simmons*, 543 U.S. 551, 573-74 (2005) (execution of individuals who committed a capital crime when they were under eighteen constitutes cruel and unusual punishment); *Graham v. Florida*, 560 U.S. 48, 82 (2010) (a sentence of life without parole for a juvenile offender who did not commit homicide violates the Eighth Amendment); *Montgomery v. Louisiana*, 136 S. Ct. 718, 736 (2016) (holding that *Miller* applies retroactively).

These cases recognize that juvenile offenders have a lesser culpability than their adult counterparts, often lack maturity, and have an underdeveloped sense of responsibility, *Graham*,

560 U.S. at 72; they are susceptible to negative influences, such as peer pressure, *id.*; they may have been subject to a dysfunctional upbringing, *Miller*, 132 S. Ct. at 2468; and, they are more amenable to rehabilitation because their characters are not as well formed as an adult's, *id.* at 2464. *Miller* summed up its holding in these terms:

> We therefore hold that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders. *Cf. Graham*, 560 U.S., at ——, 130 S. Ct., at 2030 ("A State is not required to guarantee eventual freedom," but must provide "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation"). By making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment. Because that holding is sufficient to decide these cases, we do not consider Jackson's and Miller's alternative argument that the Eighth Amendment requires a categorical bar on life without parole for juveniles, or at least for those 14 and younger. But given all we have said in *Roper*, *Graham*, and this decision about children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon. That is especially so because of the great difficulty we noted in *Roper* and *Graham* of distinguishing at this early age between "the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption." *Roper*, 543 U.S., at 573, 125 S. Ct. 1183; *Graham*, 560 U.S., at ——, 130 S. Ct., at 2026–27. Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.

*Miller*, 132 S. Ct. at 2469 (footnote omitted).

Because the Tennessee court of criminal appeals denied relief on the question before us, we must decide whether its adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The Tennessee Court of Criminal Appeals court read *Miller* to require that a defendant must be sentenced to life without the possibility of parole for it to apply.

Like the Tennessee courts, the warden argues that *Miller* applies only to those juveniles sentenced to life without the possibility of parole. Moreover, he contends that the Tennessee court decisions were not objectively unreasonable because courts that have construed *Miller* under similar circumstances have reached different conclusions. He refers us to a dissenting opinion from the denial of rehearing en banc in which the dissenter points out that—when construing *Graham* at least—courts are split about whether consecutive, fixed sentences resulting in a sentence that exceeds the defendant's life expectancy is the functional equivalent of life without parole. *Moore v. Biter*, 742 F.3d 917, 920 (9th Cir. 2014).

In our view, the Supreme Court opinions that we cited earlier illustrate the Court's growing unease with draconian sentences imposed upon juveniles, even for serious crimes. As this line of jurisprudence continues to evolve, it may well be that the Court one day holds that fixed-term sentences for juvenile offenders that are the functional equivalent of life without parole are unconstitutional, especially if the sentencing court has not taken the defendant's youth into consideration. That said, it is not our role to predict future outcomes. Because the Supreme Court has not yet explicitly held that the Eighth Amendment extends to juvenile sentences that are the functional equivalent of life, and given the fact that lower courts are divided about the scope of *Miller*, we hold that the Tennessee courts' decisions were not contrary to, or an unreasonable application of, clearly established federal law as defined by the Supreme Court. 28 U.S.C. § 2254(d)(1).

## III.

The judgment of the district court is **affirmed**.

5

**HELENE N. WHITE, Circuit Judge, concurring.**

I join in the affirmance because I agree that Starks has not met AEDPA's demanding standard for relief. I write separately because I conclude that properly applied, the Supreme Court's cases establish that Starks's sentence violates the Eighth Amendment.

In *Graham v. Florida*, 560 U.S. 48 (2010), the Supreme Court held that the Eighth Amendment "prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." *Id.* at 82. The state "need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some *realistic opportunity to obtain release before the end of that term*." *Id.* (emphasis added). The Court grounded this decision in "[c]ommunity consensus," "the limited culpability of juvenile nonhomicide offenders," "the severity of life without parole sentences," and a determination that "penological theory is not adequate to justify life without parole for juvenile nonhomicide offenders." *Id.* at 67, 74. The Court explained that none of the "goals of penal sanctions that have been recognized as legitimate"—"retribution, deterrence, incapacitation, and rehabilitation"—provides a sufficient basis for sentencing juveniles to a lifetime of incarceration. *Id.* at 71 (citing, *inter alia*, *Roper v. Simmons*, 543 U.S. 551, 571–72 (2005)).

Two years later, in *Miller v. Alabama*, 132 S. Ct. 2455 (2012), the Court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders" convicted of homicide offenses. *Id.* at 2469. Before "imposition of that harshest prison sentence," a sentencing court must "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* Otherwise, the Court explained, sentencing a juvenile homicide offender to "lifetime incarceration without possibility of parole" is cruel and unusual

punishment. *Id.* at 2475. The Court rooted this conclusion in *Graham*, and quoted *Graham*'s explanation that a prohibition on life without parole means that a state "must provide 'some meaningful opportunity to obtain release.'" *Id.* at 2469 (quoting *Graham*, 560 U.S. at 74). Together, *Graham* and *Miller* establish that the Eighth Amendment prohibits a sentencing regime that mandates a term of life imprisonment for juvenile homicide offenders without a meaningful opportunity to obtain release. *Id.* at 2460, 2469.

Starks was convicted of first-degree felony murder, in violation of Tenn. Code Ann. § 39-13-202, and attempted especially aggravated robbery, in violation of Tenn. Code Ann. §§ 39-12-101 and 39-13-403, for a robbery-murder committed when he was a juvenile. He was sentenced to life imprisonment. In Tennessee, a defendant who has been sentenced to paroleable life in prison must serve 60 years of his sentence before he is eligible for release on parole. Tenn. Code Ann. §§ 39-13-204(a), (f)(1), 40-35-501(h)(1), (i); *Vaughn v. State*, 202 S.W.3d 106, 118–20 (Tenn. 2006). However, because a prisoner serving a life sentence is eligible for up to 9 years' worth of good-time credit, the absolute minimum term of confinement is 51 years. Tenn. Code Ann. §§ 40-35-501(i)(1), 41-21-236; *Vaughn*, 202 S.W.3d at 118–20. Thus, a 17-year-old convicted of first-degree murder and sentenced to life imprisonment would be eligible for release—assuming maximum credit—at age 68.

Even without his consecutive 11-year sentence for the robbery offense,[1] Starks's life sentence for murder does not provide a meaningful opportunity for release. Data from the

---

[1]Starks focuses on his aggregate sentence for felony murder and especially aggravated robbery: life plus 11 years. Our decision in *Bunch v. Smith*, 685 F.3d 546 (6th Cir. 2012), *cert. denied*, *Bunch v. Bobby*, 133 S. Ct. 1996 (2013), which concluded that *Graham* and *Miller* did not apply to an 89-year aggregate sentence for multiple nonhomicide offenses, can be read to foreclose the aggregation of sentences for Eighth Amendment purposes in this circuit. *Id.* at 551–53; *see also Goins v. Smith*, 556 F. App'x 434, 440 (6th Cir. 2014). *But see McKinley v. Butler*, 809 F.3d 908 (7th Cir. 2016); *Moore v. Biter*, 725 F.3d 1184 (9th Cir. 2013). But this

Centers for Disease Control and Prevention show that the life expectancy for black men in the

United States—like Starks—was 71.8 years in 2010. R. 47-4, CDC Data Brief, PID 994, 996.

And data from the Department of Justice show that state prisoners age 55 to 64 had death rates

56% higher than the general population from 2001 to 2004. Starks Br. 8 (citing Christopher J.

Mumola, Bureau of Justice Statistics, No. NCJ 216340, Medical Causes of Death in State

Prisons, 2001-2004 (Jan. 2007), http://www.bjs.gov/content/pub/pdf/mcdsp04.pdf). Here, where

---

case is not on all fours with *Bunch*, which addressed "consecutive, fixed-term sentences for committing multiple nonhomicide offenses," and suggested that a life sentence would present a different case. *Bunch*, 685 F.3d at 551 (distinguishing *Graham* because it "said that a juvenile is entitled to such a 'realistic opportunity to obtain release' if a state imposes a sentence of 'life'").

Further, Starks received two separate sentences for felony murder and the underlying felony. In Tennessee, "separate convictions and punishments for felony murder and the underlying felony are permissible when the two offenses are charged as separate counts." *State v. Webster*, 81 S.W.3d 244, 251 (Tenn. Ct. Crim. App. 2002); *see also State v. Godsey*, 60 S.W.3d 759, 777–78 (Tenn. 2001); *State v. Blackburn*, 694 S.W.2d 934, 937 (Tenn. 1985). Given that both of Starks's sentences were imposed for the same felony murder, there is a stronger argument for considering the Eighth Amendment implications of his sentences in the aggregate. Many states likely would not permit separate sentences for felony murder and robbery under these circumstances, *see, e.g.*, *People v. Holt*, 937 P.2d 213, 250 & n.27 (Cal. 1997); *Commonwealth v. Rivera*, 833 N.E.2d 1113, 1123 (Mass. 2005); *State v. Frazier*, 164 P.3d 1, 2 (N.M. 2007); *State v. Hill*, 868 A.2d 290, 300 (N.J. 2005); *State v. Millsaps*, 572 S.E.2d 767, 770 (N.C. 2002); *State v. Powers*, 526 A.2d 489, 495 (R.I. 1987); *State v. Elliott*, 412 S.E.2d 762, 765 (W.Va. 1991); *State v. Krawczyk*, 657 N.W.2d 77, 85 (Wis. Ct. App. 2002) (citing *State v. Gordon*, 330 N.W.2d 564 (1983)); *Mares v. State*, 939 P.2d 724, 730 (Wyo. 1997), while other states would, *see, e.g.*, *Todd v. State*, 917 P.2d 674, 679 (Alaska 1996); *Boler v. State*, 678 So.2d 319, 322 (Fla. 1996); *State v. Ruesga*, 619 N.W.2d 377, 382–83 (Iowa 2000); *State v. Ninci*, 936 P.2d 1364, 1389 (Kan. 1997); *Bennett v. Commonwealth*, 978 S.W.2d 322, 327 (Ky. 1998); *People v. Collins*, No. 277098, 2008 WL 3876109, at *10 (Mich. Ct. App. Aug. 21, 2008) (per curiam) (citing *People v. Ream*, 750 N.W.2d 536, 546 (Mich. 2008)); *State v. Flenoy*, 968 S.W.2d 141, 145 (Mo. 1998) (en banc); *State v. Close*, 623 P.2d 940, 949–51 (Mont. 1981); *Talancon v. State*, 721 P.2d 764, 768 (Nev. 1986); *People v. Rivers*, 542 N.Y.S.2d 19, 20 (App. Div. 1989) (citing *People v. Berzups*, 402 N.E.2d 1155 (N.Y. 1981)); *State v. Smith*, 684 N.E.2d 668, 693–94 (Ohio 1997); *State v. Fedorowicz*, 52 P.3d 1194 (Utah 2002).

Because states vary in their approaches to sentencing juvenile defendants accused of felony murder, fairness requires that the sentence or sentences imposed be considered in the aggregate. For Starks, this makes the constitutional violation even more clear. However, the life sentence alone leaves him without a meaningful opportunity for release, regardless whether his consecutive sentences are properly considered in aggregate.

Starks would become eligible for release at age 68 at the earliest, and even then only with maximum credit for good behavior, he has been deprived of a "'meaningful opportunity to obtain release'" during his lifetime. *Miller*, 132 S. Ct. at 2469 (quoting *Graham*, 560 U.S. at 74).

This conclusion is supported by state-court decisions setting aside as cruel and unusual lengthy sentences that approach or exceed a defendant's life expectancy, regardless whether that sentence bears the title "life without parole." *See, e.g.*, *People v. Caballero*, 282 P.3d 291, 268 (Cal. 2012); *People v. Rainer*, No. 10CA2414, 2013 WL 1490107, at *15 (Colo. Ct. App. Apr. 11, 2013); *Casiano v. Comm'r of Corr.*, 115 A.3d 1031, 1047–48 (Conn. 2015); *Henry v. State*, 175 So.3d 675, 676, 680 (Fla. 2015); *State v. Null*, 836 N.W.2d 41, 72 (Iowa 2013); *Parker v. State*, 119 So.3d 987, 997 (Miss. 2013); *State v. Ronquillo*, 361 P.3d 779, 784–85 (Wash. Ct. App. 2015); *Bear Cloud v. State*, 334 P.3d 132, 136 (Wyo. 2014). Further, this conclusion is in line with decisions from the Seventh and Ninth Circuits holding that *Graham* and *Miller* apply to sentences of de facto life without parole.[2] *McKinley v. Butler*, 809 F.3d 908 (7th Cir. 2016); *Moore v. Biter*, 725 F.3d 1184, 1194 (9th Cir. 2013). To be sure, the sentences in the Seventh and Ninth Circuit cases far exceed Starks's, but for a defendant the number of years matters little if there is no meaningful opportunity for release.

Lastly, Starks's life sentence for first-degree felony murder was mandatory under Tennessee law, regardless of his age. In Tennessee, a defendant convicted of first-degree murder

---

[2]Other circuits apparently have not yet directly addressed this issue. The Second Circuit faced a similar *Miller* question in *United States v. Stone*, 621 F. App'x 61 (2d Cir. 2015), but explained in an unpublished summary order that the issue had been waived. The Fourth Circuit heard a *Graham* challenge to an 832-month sentence, but concluded that the claim was time-barred under 28 U.S.C. § 2255(f)(3). *In re Sloan*, 570 F. App'x 338, 339 (4th Cir. 2014). The Fifth Circuit did not apply *Graham* and *Miller* to a discretionary forty-year sentence for a nonhomicide offense, but that argument was also reviewed only for plain error. *United States v. Walton*, 537 F. App'x 430, 437 (5th Cir. 2013). The Eighth Circuit addressed a *Miller* challenge to a fifty-year sentence, but concluded that *Miller* did not apply because the sentence had not been mandatory. *United States v. Jefferson*, 816 F.3d 1016, 1019 (8th Cir. 2016).

"shall be sentenced to death, to imprisonment for life without possibility of parole, or to imprisonment for life." Tenn. Code Ann. § 39-13-204(a), (f). Although the statute nominally distinguishes between life and life without parole, there is effectively no difference where release eligibility begins only after 51 to 60 years of service on the sentence. *Id.* § 40-35-501(h)(1), (i). Thus, I conclude that Starks's mandatory life sentence violates *Miller*.

Yet, we may grant relief only if the Tennessee court's decision rejecting Starks's claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As the Supreme Court has explained, a decision is contrary to clearly established law "if the state court applies a rule different from the governing law" as set forth in the Supreme Court's cases, or if the state court "decides a case differently" than the Supreme Court has done "on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A decision involves an unreasonable application of clearly established law "if the state court correctly identifies the governing principle" from the Supreme Court's cases, but "unreasonably applies it to the facts of the particular case." *Id.*

Although I conclude that Starks's sentence violates the Eighth Amendment, "it is possible fairminded jurists could disagree" that the Tennessee court's contrary conclusion was "inconsistent with the holding" in *Miller*. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Surely no fairminded jurist could conclude that a sentence mandating a hundred years in prison is anything other than life without parole, and drawing that distinction based on the wording of a defendant's sentence—life, life without parole, or a term of years—would be an unreasonable application of *Graham* and *Miller*. But Starks's sentence falls in a gray area that raises the question whether release eligibility at an age nearing a defendant's life expectancy violates

10

clearly established law. The Supreme Court has not made clear where to draw the line, *cf. Goins v. Smith*, 556 F. App'x 434, 440 (6th Cir. 2014), and I recognize that reasonable jurists can disagree whether release after 51 to 60 years is beyond the line. Under these circumstances, § 2254(d)(1) compels us to affirm the denial of relief.